## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| American Eagle Energy Corporation | ) Case No.  15-15073-HRT |
| Tax ID / EIN: 20-0237026 | ) |
| | ) |
| Debtor. | ) |

## DEBTORS' EMERGENCY MOTION
## FOR AUTHORITY TO USE CASH COLLATERAL

**AMERICAN EAGLE ENERGY CORPORATION** ("American Eagle"), as the debtor and debtor-in-possession in Case No. 15-15073-HRT, together with its affiliate AMZG, Inc. ("AMZG"), who is also a debtor and debtor-in-possession in Case No. 15-15074-HRT (collectively, the "Debtors") pursuant to 11 U.S.C. §§363(c)(2) and Federal Rule of Bankruptcy Procedure 4001(b)(1) and Local Bankruptcy Rule 4001-3, move for authority to use cash collateral and provide adequate protection to  U.S. Bank National Association as Trustee ("Trustee") and Collateral Agent for the holders of the 11.0% Senior Secured Notes due 2019 ("Noteholders" and, together with the Trustee, the "Secured Parties"), pursuant to that certain Indenture dated August 27, 2014 ("Indenture") and in support thereof states:

### Background

1.      On May 8, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").  No trustee has been appointed.  The Debtors continue to operate their oil exploration and production business and properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  The Debtors have sought joint administration of their respective Chapter 11 cases and permission to use a consolidated case caption.

2.      As of the date hereof, no creditors' committee has been appointed in this case.  In addition, no trustee or examiner has been appointed.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

4.      The statutory predicates for the relief requested herein are §§ 361 and 363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure.

## The Debtors and its Affiliated/Related Entities

5.      American Eagle was incorporated in the state of Nevada in March 2003 under the name Golden Hope Resources Corp., but later changed its name in July 2005 to Eternal Energy Corp. In December 2011 the company changed its name to American Eagle Energy Corporation in connection with its acquisition of, and merger with, American Eagle Energy, Inc.

6.      Upon completion of the 2011 acquisition, American Eagle Energy, Inc. became AMZG, Inc., a wholly owned subsidiary of American Eagle. As of the Petition Date, AMZG has no assets and no operations. AMZG's only debt relates to guarantee claims on American Eagle obligations.

7.      The Debtors' principal offices are located at 2549 W. Main Street, Suite 202, Littleton, Colorado 80120.

8.      The Debtors engage in the acquisition, exploration and development of oil and gas properties, and are primarily focused on extracting proved oil reserves from those properties.  During the past five years, the Debtors have engaged in exploration and production activities in the northern United States as well as southeast Saskatchewan, Canada.  In July 2014, the Debtors sold all of their

net revenue and working interests in Canada to focus on exploration and production opportunities in North Dakota and Montana.

9.    American Eagle's current exploration and production activities are focused in the northwest portion of Divide County, North Dakota commonly referred to as the Spyglass Area ("Spyglass Area") were American Eagle produces oil and natural gas reserves from the Three Forks and Middle Bakken formations.

### Secured Parties Debt Obligations

10.    On August 27, 2014, the Debtors entered into: (i) that certain Credit Agreement among American Eagle, as borrower, AMZG, as guarantor, the Lenders (as defined therein), SunTrust Bank, as Administrative Agent and Issuing Bank, and SunTrust Robinson Humphrey, Inc., as Bookrunner and Sole Lead Arranger (the "SunTrust Credit Agreement"); and (ii) the Indenture (the Indenture, together with all other agreements and documents delivered pursuant thereto or in connection therewith, the "Prepetition Notes Documents") among American Eagle, as issuer, AMZG, as guarantor, and the Trustee.

11.    Pursuant to the Indenture and the Prepetition Notes Documents, the Debtors incurred indebtedness to the Noteholders (the "Senior Secured Notes").

12.    The Debtors used the funds borrowed under the Senior Secured Notes to pay-off a loan facility from Morgan Stanley in the approximate amount of $135,000,000 including related fees and ancillary costs and a working capital deficit of $26,100,000.  The Debtors used the remaining $13,800,000 in proceeds as capital for future operations.

13.    Originally, the Debtors planned to complete their capitalization and borrow funds from SunTrust to provide additional capital, but SunTrust reduced the borrowing base to $0 and the

3

Debtors were unable to borrow funds under the SunTrust Credit Agreement had they wanted to. On April 2, 2015, the Debtors received notice from SunTrust that, among other things, all Commitments (as defined in the SunTrust Credit Agreement) had terminated and neither SunTrust nor the Lenders (as defined in the SunTrust Credit Agreement) had any further commitment or other obligation to make Loans (as defined in the SunTrust Credit Agreement) to, or issue Letters of Credit (as defined in the SunTrust Credit Agreement) on behalf of, the Debtors.

14.     As of the Petition Date, the Debtors were indebted and liable to the Secured Parties, without objection, defense, counterclaim, or offset of any kind, under the Prepetition Notes Documents, in the aggregate amount of not less: (i) $175,000,000 in aggregate principal amount; (ii) all accrued and unpaid interest; and (iii) additional amounts owed under the Prepetition Notes Documents including, but not limited to, defaulted interest, interest on defaulted interest, fees, expenses, costs, charges, premiums, make-whole, prepayment, yield maintenance or similar amounts payable pursuant to the Indenture or the Prepetition Notes Documents, and all other amounts due and owing under the Prepetition Notes Documents (collectively, the "Prepetition Notes Obligations").

### Reasons for Filing Chapter 11

15.     As an exploration and development company, the Debtors' assets, revenue, and general financial condition are directly correlated to price of oil and natural gas. The sharp decrease in oil and natural gas prices by in excess of fifty percent (50%) from the time the Prepetition Notes Obligations were issued and remaining depressed until now has made it difficult to obtain capital for further development of American Eagle's leasehold interests.

16.     Unable to raise additional capital in this environment, the Debtors were faced with declining assets and revenue while costs remained relatively constant.

4

17.     In February of 2015, liquidity concerns caused the Debtors to commence and engage in discussions with the an ad hoc group of Noteholders (the "Ad Hoc Group") regarding the approaching interest payment due under the Prepetition Notes Documents.  Those discussions yielded a forbearance agreement executed by the Debtors and the Ad Hoc Group, which provided for, among other things, a $4,000,000 partial interest payment to the Trustee for the benefit of the Noteholders and a forbearance to allow the Debtors and Ad Hoc Group to discuss restructuring and sale alternatives.

18.     As crude oil prices remained low, the Debtors and Ad Hoc Group continued discussions on maximizing value to the Secured Parties and all stakeholders in the Debtors' business and ultimately determined that relief under Chapter 11 of the Bankruptcy Code would allow the Debtors the best opportunity to restructure or sell its assets and maximize value.

## Cash Collateral and the Relief Sought by the Debtor

19.     In order to continue operations and allow for a successful reorganization and/or sale of the Debtors' assets on a going concern basis, the Debtors will require the use of funds on hand and funds to be received.  The Debtors believe those funds are subject to a lien in favor of the Secured Parties.

20.     The cash collateral, which the Debtors seek to use, is comprised, in whole or in part, of funds held in various bank accounts at Key Bank, Wells Fargo Bank, the Bank of North Dakota, and US Bank ("Cash Accounts"), along with receivables owed to the Debtors (collectively, the "Cash Collateral").

21.     Pursuant to the Prepetition Notes Documents, the Debtors granted to the Secured Parties, to secure the Prepetition Notes Obligations, a security interest in and continuing lien

5

("Prepetition Liens") on all of the Debtors' assets and property ("Prepetition Collateral"), including the Cash Collateral. The Prepetition Liens in the Prepetition Collateral, including the Cash Collateral, are legal, valid, binding, enforceable, non-avoidable and perfected liens.

22.     Consequently, prior to filing this Motion, the Debtors sought and obtained consent to use of Cash Collateral from the Ad Hoc Group and the Trustee. Such limited consent is conditioned upon the court's entry of an order in the form attached to this Motion as **Exhibit "A"**.

23.     A budget showing estimated receipts and disbursements (the "Approved Budget") for the Debtors for the next four weeks (the "Approved Budget Period") is attached hereto as **Exhibit "B"** and is incorporated herein by reference. The Debtors' use of Cash Collateral shall be subject to and governed by the terms of the Approved Budget and the Debtors acknowledge that the Secured Parties shall have no obligation to permit the use of Cash Collateral hereunder other than in accordance with the Approved Budget and as set forth in this Order; provided, however, that: (i) with respect to each use of Cash Collateral identified in the Approved Budget,[1] the Debtors shall be permitted to use Cash Collateral in an amount of up to ten percent (10%) of the amount originally identified in the Approved Budget for each such use of cash, which shall be measured at the end of each week for each line item by reference to: (a) the aggregate amount of Cash Collateral actually used by the Debtors cumulatively through the end of such week in the Approved Budget Period for such line item; and (b) the aggregate amount of Cash Collateral originally budgeted in the Approved Budget cumulatively through the end of such week in the Approved Budget Period for such line item (the "Permitted Uses of Cash Variance"); and (ii) with respect to the "Total Cumulative Payments" reflected for each week in the Approved Budget Period, the Debtors shall be permitted to use Cash Collateral in an amount of up to five percent (5%) of the originally identified amount in the

---

1   Such uses of Cash Collateral are (i) Vendor Payments; (ii) Lease Operating Payments; (iii) Revenue Distributions

Approved Budget (the "Total Cumulative Payments Variance" and, together with the Permitted uses of Cash Variance, the "Permitted Variance").

24.     As adequate protection for the use of Cash Collateral, the Debtors propose to grant Secured Parties, replacement liens to the same validity, extent, and priority as their respective prepetition liens on all property of the Debtors now existing or hereafter acquired including, without limitation, all Cash Collateral, cash and cash equivalents, and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries, tax and other refunds, insurance proceeds, commercial tort claims, rights under section 506(c) of the Bankruptcy Code, avoidance actions under chapter 5 of the Bankruptcy Code, all other Prepetition Collateral and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing (all of the foregoing collateral collectively referred to as the "Adequate Protection Collateral" and such adequate protection replacement liens, the "Adequate Protection Replacement Liens").

25.     The Adequate Protection Replacement Liens and the Adequate Protection Priority Claims (as defined herein) will be subject to and subordinate to a fund (the "Carve Out") for the

---

– Current; (iv) Revenue Distributions – Suspense Wells; and (v) Cash G&A.

payment of: (i) the unpaid quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a), together with interest payable thereon pursuant to applicable laws; (ii) any fees payable pursuant to the Clerk of the Bankruptcy Court; and (iii) the allowed and reasonable fees and expenses of professionals employed by the Debtors and any Official Committee of Unsecured Creditors appointed in the Debtors' Chapter 11 cases ("Committee") and pursuant to sections 327, 328 and 1103 of the Bankruptcy Code: (1) if incurred prior to the occurrence of the Termination Date (as defined in the proposed order attached hereto as Exhibit "A") up to the amounts set forth in the Approved Budget under the line item designated for each professional; and (2) if incurred following the occurrence of the Termination Date, up to an amount not to exceed $250,000 (excluding any retainers paid to the Debtors' professionals prior to the Petition Date).

26.     Moreover, the Carve-Out shall not include, apply to, or be available for any fees or expenses incurred by any party, including any Debtors or the Committee, or its respective professionals, in connection with, or relating to, the investigation initiation or prosecution of any claims, causes of action or other litigation against any of the Secured Parties, including without limitation, challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim, or offset to, the Prepetition Notes Obligations, the Prepetition Notes Documents, or the Adequate Protection Replacement Liens or Adequate Protection Priority Claims (as defined herein); provided, however, that subject to the entry of a final order approving this Motion ("Final Order"), the Committee, if any, may use up to $20,000 (the "Investigation Fund") to investigate (the "Investigation") the liens and claims of the Secured Parties, but may not use the Investigation Fund to initiate, assert, join, commence, support or prosecute any actions or discovery with respect thereto.

27.     As additional adequate protection for the use of Cash Collateral, the Debtors propose to grant Secured Parties an administrative expense claim pursuant to §503(b) of the Bankruptcy Code to the extent of any diminution in value of the interest of the Secured Parties in the Prepetition Collateral including, without limitation, the Cash Collateral, from and after the Petition Date.

28.     To the extent that the adequate protection described above proves to be insufficient, the Trustee, for the benefit of the Secured Parties, subject to the Carve-Out, shall be granted first priority superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (the "Adequate Protection Priority Claims") with priority in payment over any other administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, whether or not such expenses or claims arise in these Chapter 11 Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom.

29.     As additional adequate protection, the Debtors  propose to pay: (A) to the Ad Hoc Group of Noteholders, ongoing payment in cash on a current basis, no less than monthly, and including any amounts incurred prior to the Petition Date, of the reasonable and documented fees, costs and expenses of the Ad Hoc Group of Noteholders in connection with the Chapter 11 Cases (including, without limitation, the fees and expenses of: (i) Andrews Kurth LLP and local counsel as counsel to the Ad Hoc Group of Noteholders; and (ii) Walter A. Jones and his agents, affiliates and/or successors as financial advisor to the Ad Hoc Group of Noteholders); and (B) to the Trustee, ongoing payment in cash on a current basis, no less than monthly, and including any amounts incurred prior to the Petition Date, of the reasonable and documented fees, costs and expenses of the Trustee in connection with the Chapter 11 Cases (including, without limitation, the fees and

9

expenses of Gibson, Dunn & Crutcher LLP as counsel to the Trustee).  All of the amounts to be paid pursuant to the foregoing clauses (A) and (B) shall be paid regardless of whether such amounts accrued prior to the Petition Date (if any such amounts have accrued and are unpaid) or after the Petition Date, whether or not such amounts are included in the Approved Budget (and the Approved Budget shall be adjusted accordingly), and shall be paid upon presentment to the Debtors without further motion, fee application, or order of the Court.

30.     As additional adequate protection, the Debtors shall deliver to the Trustee and the professionals of the Ad Hoc Group of Noteholders:

(i)     each Monday unless such day is a federal holiday and then on the first business day of each week: (1) a weekly report of receipts, disbursements, and a reconciliation of actual expenditures and disbursements with those set forth in the Approved Budget, showing any variance to the proposed receipts and disbursements set forth in the Approved Budget (the "Budget Reconciliation"); (2) an accounts receivable aging report; and (3) a report of accounts payable and liabilities accrued from the Petition Date through the date of such report;

(ii)    promptly, but in no event later than three (3) days after receipt by the Debtors (or such shorter period as may be necessary in order to ensure adequate time to substantively respond), copies of any notice of default, breach, termination or similar notice under any joint operating agreement, lease, loan agreement, note, or other contract or agreement to which either or both of the Debtors are parties; and

(iii)   all other information, reports, documents and other material reasonably

10

requested by the Trustee or the Ad Hoc Group within three (3) days of the Debtors' receipt of such request.

31.     In addition to any inspection rights under the Prepetition Notes Documents, upon reasonable notice and at such reasonable times during normal business hours and otherwise as may be reasonably requested, the Debtors shall permit any representatives designated by the Secured Parties to visit and inspect any of their properties, to inspect, copy, and take extracts from their financial and accounting records, to have reasonable access to all records and files of the Debtors pertaining to the Prepetition Collateral and the Adequate Protection Collateral, and to discuss their affairs, finances, and accounts with their officers, financial advisors, and independent accountants.

**WHEREFORE,** the Debtors respectfully request this Court enter an order: (i) granting this Motion; (ii) authorizing the Debtors to use Cash Collateral under the terms of this Motion; and (iii) granting such other and further relief as is just and proper.

**DATED** this 11th day of May, 2015.

/s/ Elizabeth A. Green
Elizabeth A. Green, Esq.
Florida Bar No, 0600547
Jimmy D. Parrish
Florida Bar No. 526401
Lars Fuller, Esq.
Attorney Reg. No. 26051
**BAKER & HOSTETLER LLP**
SunTrust Center, Suite 2300
Post Office Box 112
Orlando, Florida 32802-0112
Telephone: 407-649-4000
Facsimile: 407-841-0168
Attorneys for the Debtors

11

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| American Eagle Energy Corporation | ) Case No.  15-15073-HRT |
| Tax ID / EIN: 20-0237026 | ) |
| | ) |
| Debtor. | ) |

---

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY.** that on May 11, 2015, a true copy of **DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING,** together with all exhibits, has been furnished either electronically or by facsimile and by U.S. First Class, postage prepaid mail to: American Eagle Energy Corporation, 2549 W. Main Street, Suite 202, Littleton, CO 80120 (Debtor); AMZG, Inc., 2549 W. Main Street, Suite 202, Littleton, CO 80120 (Debtor); Paul Silverstein, Esq., Andrews Kurth, 450 Lexington Avenue, New York, NY 10017 (Counsel for the Ad Hoc Noteholders); all creditors and parties-in-interest on the matrix attached to the original of this Motion and filed with the Court; and the Office of the United States Trustee, Byron G. Rogers Federal Building, 1961 Stout St., Suite 12-200, Denver, Colorado 80294.

/s/ Elizabeth A. Green
Elizabeth A. Green, Esq.

12

Top 20 Unsecured Creditors Matrix (as of 5.11.15).TXT

640 Energy, LLC
1400 16th Street
Suite 400
Denver, CO 80202

Arctic Energy Services, LLC
PO Box 1321
Glenrock, WY 82637

Atlas Tubular, LP
PO Box 431
Robstown, TX 78380

Cruz Energy Services, LLC
7000 E. Palmer-Wasilla Hwy
Palmer, AK 99645

Dishon Disposal, Inc.
5613 DTC Parkway
Suite 800
Greenwood Village, CO 80111

DNOW L.P.
NOV Wilson, LP.
PO Box 200822
Dallas, TX 75320-0822

GE Oil & Gas Pressure Control LP
PO Box 911776
Dallas, TX 75391-1776

Halliburton  Energy Services, Inc.
PO Box 301341
Dallas, TX 75303-1341

Hydratek, Inc.
12069 Highway 16
Sidney, MT 59270

Jacam Chemicals 2013, LLC
PO Box 96
205 South Broadway
Sterling, KS 67579

Top 20 Unsecured Creditors Matrix (as of 5.11.15).TXT
KLX Energy Services, LLC
28099 Expedite Way
Chicago, IL 60695-0001

Liberty Oilfield Services, LLC
950 17th Street
Suite 2000
Denver, CO 80202

National Oilwell Varco
Wells Fargo Bank
PO Box 201224
Dallas, TX 75320-1224

Northern States Completions
PO Box 1267
Williston, ND 58802

Precision Completion & Production
Svcs.
PO Box 204789
Dallas, TX 75320-4789

Recievables Control Corp.
FBO  Creditors of Portal Service
7373 Kirkwood Court
Minneapolis, MN 55369

Samson Resources Company
PO Box 972282
Dallas, TX 75397-2282

Schlumberger Lift Solutions Canada Ltd.
Lockbox C05618U
PO Box 45 STN M
Calgary, AB T2P 2G9
CANADA

Super Heaters, North Dakota, LLC
PO Box 421328
Houston, TX 77242-1328

Well Water Solutions and
Rentals, Inc.

Page 2

Top 20 Unsecured Creditors Matrix (as of 5.11.15).TXT
PO Box 2105
Casper, WY 82602

Secured Creditors - AEEC.txt

Bill Roberts, Esq.
Roberts & Olivia, LLC
2060 Broadway
Suite 250
Boulder, CO 80302

Calfrac Well Services Corp.
717-17 Street
Suite 1445
Denver, CO 80202

CMG Oil & Gas, Inc.
PO Box 829
Stanley, ND 58784

Drill Tech Subsidiary of BJ's DST
f/k/a Drill Tech, LLC
PO Box 519
Mohall, ND 58761

G-Style Transport, LLC
N51012 Hutchins Lane
Eleva, WI 54738

Hamm & Phillips Service Company,
Inc.
PO Box 201653
Dallas, TX 75320-1653

M-I, LLC d/b/a MI-SWACO
PO Box 732135
Dallas, TX 75373-2135

Miller Oil Company, Inc.
Box 4708
Culbertson, MT 59218

Nabors Drilling USA, LP
PO Box 973527
Dallas, TX 75397-3527

Sanjel  USA , Inc.
PO Box 732149
Denver, CO 80202

Secured Creditors - AEEC.txt

Schlumberger Technology Corp.
PO Box 732149
Dallas, TX 75373-2149

State of North Dakota
Oil and Gas Division
600 E. Boulevard
Dept. 405
Bismarck, ND 58505-0840

SunTrust Bank
SunTrust Robinson Humphrey, Inc.
ATTN  Yann Pirio
3333 Peachtree Street NE
Atlanta, GA 30326

Thru Tubing Solutions, Inc.
PO Box 203379
Dallas, TX 75320-3379

Triple S Enterprises, Inc.
PO Box 477
Crosby, ND 58730-0477

U.S. Bank National Association
Trustee, Collateral Agent, Control
Agent -  11th Floor
5555 San Felipe Street
Houston, TX 77056

USG Midstream Bakken 1, LLC
700 Universe Blvd.
Juno Beach, FL 33408

WISCO, Inc.
PO Box 732328
Dallas, TX 75373-2328

EXHIBIT "A"

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| American Eagle Energy Corp. | ) | |
| Tax ID / EIN: 20-0237026 | ) | Case No.  15-15073-HRT |
| | ) | |
| AMZG, Inc. | ) | |
| Tax ID / EIN: 20-8642477 | ) | Case No. 15-15074-HRT |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (II) PROVIDING ADEQUATE PROTECTION TO SECURED PARTIES PURSUANT TO SECTIONS 361, 362, AND 363 OF THE BANKRUPTCY CODE, AND (III) SCHEDULING FINAL HEARING

This matter is before the Court on the motion (the "Motion"),[1] dated May 11, 2015, of

American Eagle Energy Corporation ("American Eagle") as debtor and debtor in possession, and

AMZG, Inc. ("AMZG"), (together with American Eagle, the "Debtors"), its affiliated debtor and

debtor in possession for entry of: (i) an order (the "Interim Order") authorizing the Debtors to

use Cash Collateral (as hereinafter defined) pursuant to section 363 of title 11 of the United

States Code (the "Bankruptcy Code") on an interim basis pending a final hearing on the Motion

(the "Final Hearing") and entry of a final order (the "Final Order"); (ii) granting adequate

protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code to the Secured Parties

(as hereinafter defined) with respect to, among other things, such use of Cash Collateral and any

diminution in the value of the Collateral (as hereinafter defined); and (iii) in accordance with

Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

requesting that this Court schedule the Final Hearing; and the Court having considered the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

Motion and the exhibits attached thereto, including, without limitation, the Approved Budget (as hereinafter defined); and a hearing to consider approval of the Motion on an interim basis having been held and concluded on May [   ], 2015 (the "Interim Hearing"); and upon the pleadings filed with, and the proceedings held before, the Court; and, after due deliberation, sufficient cause appearing therefor, the Court makes the following findings of fact and conclusions of law:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

A.  Petition Date.  On May 8, 2015 (the "Petition Date"), the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code with this Court.  The Debtors have continued in the management and operation of their business and property pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.  Jurisdiction and Venue.  This Court has core jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected thereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  Notice.  Notice of the Motion and the relief requested therein was served by the Debtors on its twenty largest unsecured creditors, the Secured Parties and the Office of the United States Trustee (the "U.S. Trustee").  Under the circumstances, such notice constitutes due and sufficient notice.

D.  Committee Formation.  No committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (a "Committee") has been appointed.

E.  Debtors' Stipulations.  The Debtors hereby admit, stipulate, acknowledge and agree as follows (collectively, the "Stipulations"):

(i)  Prepetition Notes Documents: on August 27, 2014, the Debtors entered into (i) that certain Credit Agreement among AEEC, as borrower, AMZG, as guarantor, the

2

Lenders (as defined therein), SunTrust Bank, as Administrative Agent and Issuing Bank, and SunTrust Robinson Humphrey, Inc., as Bookrunner and Sole Lead Arranger (the "SunTrust Credit Agreement"); and (ii) that certain Indenture (the "Indenture" and, together with all other agreements and documents delivered pursuant thereto or in connection therewith, the "Prepetition Notes Documents") among AEEC, as issuer, AMZG, as guarantor, and U.S. Bank National Association as Trustee and Collateral Agent (in such capacities, the "Trustee"). Pursuant to the Indenture and the Prepetition Notes Documents, the Debtors incurred indebtedness to the holders of the 11.0% Senior Secured Notes due 2019 (the "Noteholders" and, together with the Trustee, the "Secured Parties") issued pursuant to the Indenture (the "Senior Secured Notes").   At no time did the Debtors borrow funds under the SunTrust Credit Agreement.   On April 2, 2015, the Debtors received notice from SunTrust that, among other things, all Commitments (as defined in the SunTrust Credit Agreement) have terminated and neither SunTrust nor the Lenders (as defined in the SunTrust Credit Agreement) have any further commitment or other obligation to make Loans (as defined in the SunTrust Credit Agreement) to, or issue Letters of Credit (as defined in the SunTrust Credit Agreement) on behalf of, the Debtors.

(ii)   Obligations to Secured Parties: As of the Petition Date, the Debtors were indebted and liable to the Secured Parties, without objection, defense, counterclaim, or offset of any kind, under the Prepetition Notes Documents, in the aggregate amount of not less: (i) $175,000,000 in aggregate principal amount; (ii) all accrued and unpaid interest; and (iii) additional amounts owed under the Prepetition Notes Documents including, but not limited to, defaulted interest, interest on defaulted interest, fees, expenses, costs, charges, premiums, make-whole, prepayment, yield maintenance or similar amounts payable pursuant to the Indenture or

the Prepetition Notes Documents, and all other amounts due and owing under the Prepetition

Notes Documents (collectively, the "Prepetition Notes Obligations").

(iii)    Prepetition Liens and Collateral:   Pursuant to the Prepetition Notes

Documents, the Debtors granted to the Secured Parties, to secure the Prepetition Notes

Obligations, a security interest in and continuing lien on (the "Prepetition Liens") all of the

Debtors' assets and property (the "Prepetition Collateral").   As of the Petition Date, the

Prepetition Notes Obligations and the Prepetition Liens: (a) are legal, valid, binding, enforceable,

non-avoidable and perfected liens; (b) were granted to, or for the benefit of, the Secured Parties

for fair consideration and reasonably equivalent value; (c) are not subject to avoidance,

recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as

defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-

bankruptcy law; and (d) are secured by first priority security interest in the Prepetition Collateral

and are subject and subordinate only to valid, perfected and unavoidable liens permitted under

the Prepetition Notes Documents, to the extent such permitted liens are senior to the liens

securing the Prepetition Notes Obligations ("Permitted Prior Liens");[2] and

(iv)    Cash Collateral.  The Debtors acknowledge that all of the Debtors' cash,

including the cash in its deposit accounts, wherever located, whether Prepetition Collateral or

proceeds of Prepetition Collateral, constitutes the Cash Collateral of the Secured Parties.

F.    Need to Use the Prepetition Collateral (including, without limitation, the Cash

Collateral).  The Debtors contend that they have an immediate need to use the Prepetition

---

[2] For purposes of this Order, Permitted Prior Liens shall include any liens that are expressly permitted under the Prepetition Notes Documents and are otherwise valid, senior, enforceable, perfected and non-avoidable under applicable law as of the Petition Date.  Nothing herein shall constitute a finding or ruling by this Court that any such liens are actually valid, senior, enforceable, perfected or non-avoidable.

Collateral, including, without limitation, the Cash Collateral, among other things, to: permit the orderly continuation of the operation of its business, maintain business relationships with vendors, suppliers and customers, make payroll, make necessary and required capital expenditures and to satisfy other operational needs. The Debtors contend that access to sufficient working capital and liquidity through the use of Cash Collateral is of vital importance to maximizing the value of the Debtors' assets and business for the benefit of the Debtors' estate and creditors.

G.   <u>Adequate Protection for the Secured Parties</u>. The Secured Parties are entitled to the adequate protection set forth herein pursuant to sections 361, 362 and 363 of the Bankruptcy Code, including for any diminution in the value of all Prepetition Collateral, including Cash Collateral. Based on the Motion, the terms of the proposed adequate protection arrangements and use of the Prepetition Collateral, including, without limitation, the Cash Collateral, contemplated hereby are fair and reasonable, reflect the Debtors' sound and prudent exercise of their business judgment, and constitute reasonably equivalent value and fair consideration for the limited consent of the Trustee and the Ad Hoc Group and are in all respects consistent with the provisions of the Bankruptcy Code and applicable law.

H.   <u>Limited Consent</u>. The Trustee and the Ad Hoc Group have consented to the Debtors' use of the Prepetition Collateral, including the Cash Collateral, solely pursuant to the terms of this Order. Nothing in this Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Secured Parties are or will be adequately protected with respect to use by the Debtors of Prepetition Collateral including, without limitation, the Cash Collateral.

I.      Section 552(b).   As a result of the limited consent for the use of its Cash Collateral for payments made in accordance with the Approved Budget (as defined below), the Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

J.      Good Faith.  Based on the record before the Court, the terms of the use of the Cash Collateral as provided in this Order have been negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates, and creditors.

K.      Consideration.  The Debtors will receive and have received fair consideration and reasonably equivalent value in exchange for use of Cash Collateral and all other financial accommodations provided under this Order.

L.      Immediate Entry of Interim Order.  For the reasons stated above, the Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and the Local Bankruptcy Rules.  Absent granting the relief set forth in this Order, the Debtors' business, assets and estate will be immediately and irreparably harmed.  This Court concludes that authorization to use the Prepetition Collateral including, without limitation, the Cash Collateral, in accordance with this Order is therefore in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing business during the pendency of these Chapter 11 Cases.

**NOW, THEREFORE,** on the Motion, the foregoing findings, acknowledgements and conclusions, and upon the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefore,

**IT IS ORDERED** that:

1.      <u>Motion Granted</u>.  The Motion is hereby granted on an interim basis in accordance with the terms and conditions set forth in this Order.  Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      <u>Use of the Prepetition Collateral (including, without limitation, the Cash Collateral)</u>.  Subject to the terms and conditions of this Order, the Debtors are authorized, pursuant to section 363 of the Bankruptcy Code, to use the Cash Collateral.  The Debtors are prohibited from using Cash Collateral other than in accordance with the terms and conditions of this Order and the Approved Budget (as defined below).  If the Final Order has not been entered by 5:00 p.m. (Prevailing Mountain Time) on June [ _____ ],  2015  (the  "<u>Cash Collateral Termination Date</u>"), the Debtors shall be prohibited, without the necessity of further Court order, from using Cash Collateral under the terms of this Order.

3.      <u>Cash Collateral Budget</u>.

(a)      <u>Approved Budget</u>.  Attached hereto as <u>Exhibit "A"</u> is the budget (the "<u>Approved Budget</u>") which reflects, on a line-item basis upcoming operating expenses of the Debtors for the next four (4) weeks (the "<u>Approved Budget Period</u>").  The Debtors' use of Cash Collateral is subject to and governed by the terms of the Approved Budget and the Secured Parties shall have no obligation to permit the use of Cash Collateral hereunder other than in accordance with the Approved Budget and as set forth in this Order; <u>provided</u>, <u>however</u>, that: (i) with respect to each use of Cash Collateral identified in the Approved Budget,[3] the Debtors shall be permitted to use

---

[3] Such uses of Cash Collateral are (i) Vendor Payments; (ii) Lease Operating Payments; (iii) Revenue Distributions – Current; (iv) Revenue Distributions – Suspense Wells; and (v) Cash G&A.

Cash Collateral in an amount of up to ten percent (10%) of the amount originally identified in the Approved Budget for each such use of cash, which shall be measured at the end of each week for each line item by reference to: (a) the aggregate amount of Cash Collateral actually used by the Debtors cumulatively through the end of such week in the Approved Budget Period for such line item; and (b) the aggregate amount of Cash Collateral originally budgeted in the Approved Budget cumulatively through the end of such week in the Approved Budget Period for such line item (the "Permitted Uses of Cash Variance"); and (ii) with respect to the "Total Cumulative Payments" reflected for each week in the Approved Budget Period, the Debtors shall be permitted to use Cash Collateral in an amount of up to five percent (5%) of the originally identified amount in the Approved Budget (the "Total Cumulative Payments Variance" and, together with the Permitted uses of Cash Variance, the "Permitted Variance").

(b)     Enforceable Obligations. No obligation, payment, transfer or grant of security under this Order shall be: (i) stayed, restrained, voidable, avoidable or recoverable under any section of the Bankruptcy Code or any other applicable law; or (ii) subject to avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge under any section of the Bankruptcy Code or any other applicable law by any person or entity.

4.     Adequate Protection for Secured Parties.  In consideration for the use of the Prepetition Collateral, including the Cash Collateral, from and after the Petition Date and the limited consent to the entry of this Order, the Secured Parties shall receive the following adequate protection (collectively, the "Adequate Protection"):

(a)     Replacement Liens and Superpriority Claim.  To the extent of any diminution in value of the interest of the Secured Parties in the Prepetition Collateral including, without

8

limitation, the Cash Collateral, from and after the Petition Date, the Trustee, for itself and for the benefit of the Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361 and 363 of the Bankruptcy Code, replacement liens upon all property of the Debtors now existing or hereafter acquired including, without limitation, all Cash Collateral, cash and cash equivalents, and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries, tax and other refunds, insurance proceeds, commercial tort claims, rights under section 506(c) of the Bankruptcy Code, avoidance actions under chapter 5 of the Bankruptcy Code, all other Prepetition Collateral and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing (all of the foregoing collateral collectively referred to as the "Adequate Protection Collateral" and such adequate protection replacement liens, the "Adequate Protection Replacement Liens"). The Adequate Protection Replacement Liens on such Adequate Protection Collateral and the Adequate Protection Priority Claims shall be subject and subordinate only to the extent applicable: (i) the Permitted Prior Liens; and (ii) on and after the occurrence of a Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth herein.

(b)      Administrative Expense Claim.   Pursuant to sections 361 and 363 of the Bankruptcy Code, to the extent of any diminution in value of the interest of the Secured Parties in the Prepetition Collateral including, without limitation, the Cash Collateral, from and after the Petition Date, the Secured Parties are hereby granted an administrative expense claim pursuant to section 503(b) of the Bankruptcy Code.

(c)      Adequate Protection Priority Claims.   To the extent that the adequate protection described above proves to be insufficient, the Trustee, for the benefit of the Secured Parties subject to the Carve-Out (as defined herein), shall be granted first priority superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (the "Adequate Protection Priority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, whether or not such expenses or claims arise in these Chapter 11 Cases or in any subsequent case or proceedings under the Bankruptcy Code that may result therefrom.

(d)      Adequate Protection Payment.   As adequate protection to the Secured Parties, the Debtors are authorized and directed to pay: (A) to the Ad Hoc Group, ongoing payment in cash on a current basis, no less than monthly, and including any amounts incurred prior to the Petition Date, of their reasonable and documented fees, costs and expenses in connection with the Chapter 11 Cases (including, without limitation, the fees and expenses of: (i) Andrews Kurth LLP and local counsel, as counsel to the Ad Hoc Group; and (ii) Walter A. Jones and his agents, affiliates and/or successors as financial advisor to the Ad Hoc Group); and (B) to the Trustee, ongoing payment in cash on a current basis, no less than monthly, and including any amounts

incurred prior to the Petition Date, of the reasonable and documented fees, costs and expenses of the Trustee in connection with the Chapter 11 Cases (including, without limitation, the fees and expenses of Gibson, Dunn & Crutcher LLP as counsel to the Trustee). All of the amounts to be paid pursuant to the foregoing clauses (A) and (B) shall be paid regardless of whether such amounts accrued prior to the Petition Date (if any such amounts have accrued and are unpaid) or after the Petition Date, whether or not such amounts are included in the Approved Budget (and the Approved Budget shall be adjusted accordingly), and shall be paid upon presentment to the Debtors without further motion, fee application, or order of the Court.

(e)     Reporting Requirements.   As further adequate protection, the Debtors shall deliver to the Trustee and the professionals of the Ad Hoc Group:

      i.     each Monday unless such day is a federal holiday and then on the first business day of each week: (i) a weekly report of receipts, disbursements, and a reconciliation of actual expenditures and disbursements with those set forth in the Approved Budget, showing any variance to the proposed receipts and disbursements set forth in the Approved Budget (the "Budget Reconciliation"); (ii) an accounts receivable aging report; and (iii) a report of accounts payable and liabilities accrued from the Petition Date through the date of such report;

      ii.    promptly, but in no event later than three (3) days after receipt by the Debtors (or such shorter period as may be necessary in order to ensure adequate time to substantively respond), copies of any notice of default, breach, termination or similar notice under any joint operating agreement, lease, loan agreement, note, or other contract or agreement to which either or both of the Debtors are parties; and

      iii.   all other information, reports, documents and other material reasonably requested by the Trustee or the Ad Hoc Group within three (3) days of the Debtors' receipt of such request.

(f)     Inspection Rights.  In addition to any inspection rights under the Prepetition Notes Documents, upon reasonable notice and at such reasonable times during normal business hours and otherwise as may be reasonably requested, the Debtors shall permit any representatives designated by the Trustee or the Ad Hoc Group to visit and inspect any of their properties, to

inspect, copy, and take extracts from their financial and accounting records, to have reasonable access to all records and files of the Debtors pertaining to the Prepetition Collateral and the Adequate Protection Collateral, and to discuss their affairs, finances, and accounts with their officers, financial advisors, and independent accountants.

(g)    Right to Seek Additional Adequate Protection.  Nothing herein shall be deemed to be a finding by the Court or an admission by the Secured Parties that the Secured Parties are adequately protected for the use of the Cash Collateral as provided by this Order. The Secured Parties may request Court approval for additional or alternative adequate protection, without prejudice to any objection of the Debtors or any other party in interest to the grant of any such additional or alternative adequate protection.

(h)    Debtors Jointly and Severally Liable.  The Debtors shall be each jointly and severally liable for administrative expense claims and Adequate Protection Priority Claims of the Secured Parties arising hereunder.

5.    Carve-Out.  As used in this Order, the "Carve-Out" means: (a) the unpaid quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a), together with interest payable thereon pursuant to applicable laws and any fees payable pursuant to the Clerk of the Bankruptcy Court; (b) the allowed and reasonable fees and expenses of professionals employed by the Debtors and the Committee pursuant to sections 327, 328 and 1103 of the Bankruptcy Code (i) if incurred prior to the occurrence of the Termination Date (as defined herein) up to the amounts set forth in the Approved Budget under the line item for each professional and (ii) if incurred following the occurrence of the Termination Date, up to an amount not to exceed $250,000 in the aggregate (excluding any retainers paid to the Debtors' professionals prior to the Petition Date). Notwithstanding anything to the contrary contained herein, the Carve-Out shall not include,

apply to, or be available for any fees or expenses incurred by any party, including the Debtors or the Committee, or their respective professionals, in connection with, or relating to, the investigation initiation or prosecution of any claims, causes of action or other litigation against any of the Secured Parties, including without limitation, challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim, or offset to, the Prepetition Notes Obligations, the Prepetition Notes Documents, or the Adequate Protection Liens or Adequate Protection Priority Claims; provided, however, that subject to the Final Order, the Committee, if any, may use up to $20,000 (the "Investigation Fund") to investigate (the "Investigation") the liens and claims of the Secured Parties, but may not use the Investigation Fund to initiate, assert, join, commence, support or prosecute any actions or discovery with respect thereto.

6.      Automatic Post-Petition Lien Perfection.   This Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the Adequate Protection Replacement Liens without the necessity for: (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction; or (b) taking any other action to validate or perfect the Adequate Protection Replacement Liens or to entitle such Adequate Protection Replacement Liens to the priorities granted herein.   Notwithstanding the foregoing, the Noteholders, in their sole discretion, may direct the Trustee to file financing statements, mortgages, security agreements, notices of liens and other similar documents for the benefit of the Noteholders, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded on the Petition Date.

The Debtors shall execute and deliver to the Secured Parties all such financing statements, mortgages, notices and other documents as it may reasonably request to evidence and confirm the contemplated priority of the Adequate Protection Replacement Liens granted pursuant hereto. Without limiting the foregoing, the Secured Parties, in their sole discretion, may file a photocopy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Order. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other Adequate Protection Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force or effect with respect to the liens on such leasehold interests or other applicable Adequate Protection Collateral or the proceeds of any assignment and/or sale thereof by the Debtors in favor of the Secured Parties in accordance with the terms of this Order.

7.     <u>Continuation of Prepetition Liens</u>.  For so long as this Order remains in effect, the Prepetition Liens of the Secured Parties in the Prepetition Collateral shall remain valid and perfected without the necessity for the Secured Parties to file any continuation statement, financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction.

8.     Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(a)     Parties in interest in this case (other than the Debtors) shall be permitted to challenge the Stipulations up to and including the day that is thirty (30) days after entry of this Order (the "Challenge Deadline").   The Committee shall be permitted to challenge the Stipulations up to and including the day that is thirty (30) days after the formation of the Committee (the "Committee Challenge Deadline").   After the Challenge Deadline, with respect to any party-in-interest other than the Committee, and after the Committee Challenge Deadline, solely with respect to the Committee, any challenge to the Stipulations shall be forever barred and enjoined.   For purposes of this order, to "challenge the Stipulations" shall include, without limitation, any of the following: (i) any defenses, offsets, demands or counterclaims relating to the Prepetition Notes Obligations, the Prepetition Notes Documents, or to the validity, priority or perfection of the Prepetition Liens; (ii) any claim or cause of action by or on behalf of a Debtor, Debtor-in-Possession, or the Debtors' estates against the Secured Parties; (iii) any attempt to disallow, subordinate, avoid, or recharacterize any of the Prepetition Notes Obligations or Prepetition Liens; (iv) any avoidance or similar action against the Secured Parties pursuant to the Bankruptcy Code or other applicable non-bankruptcy law.   The Secured Parties may, in their sole and absolute discretion and as evidenced by its explicit written consent, agree to extend the Challenge Deadline or the Challenge Deadline, as applicable, and any such agreed extension may be limited in duration, scope or otherwise.

(b)     To the extent any challenge referred to in paragraph 8(a) is timely asserted in an adversary proceeding or contested matter as set forth above, the Stipulations and the other provisions in paragraph 8(a) not subject to such challenge shall nonetheless remain binding and preclusive in these Chapter 11 Cases or in any successor case from and after the Challenge

Deadline and the Committee Challenge Deadline, as applicable, except to the extent that such Stipulations or the other provisions of paragraph 8(a) were expressly challenged in such adversary proceeding or contested matter. Nothing in this Order vests or confers on any person or entity standing or authority to pursue any cause of action belonging to the Debtors or their estates, including any claim against the Secured Parties, and each of the Secured Parties reserves all rights to challenge and object to such standing or authority.

9.     <u>Restriction on Use of Prepetition Collateral Including Cash Collateral</u>.

(a)     No portion of the Prepetition Collateral including, without limitation, the Cash Collateral (including amounts subject to the Carve-Out, other than the Investigation Fund), may be used to pay professional fees of any person or entity incurred in connection with or in relation to: (i) challenging the Prepetition Liens or Prepetition Notes Obligations; or (ii) initiating, prosecuting, commencing, asserting or maintaining any claim or cause of action (including any Claims and Defenses) against the Noteholders, the Trustee, or any of their affiliates, agents, attorneys, financial advisors, consultants, officers, directors and employees, including any discovery taken in anticipation thereof.

(b)     Furthermore, none of the Prepetition Collateral, including, without limitation, the Cash Collateral, shall be used to prevent, hinder or delay the Secured Parties from exercising any rights and remedies hereunder (including, without limitation, any enforcement or realization upon the Prepetition Collateral) once an Event of Default (defined below) has occurred and is continuing.

10.     <u>Waiver of Section 506(c) Claims</u>. As a further condition of the limited consent to the Debtors' use of the Prepetition Collateral, including, without limitation, the Cash Collateral, no costs or expenses of administration of these Chapter 11 Cases or any successor case

(including, without limitation, any costs or expenses of preserving or disposing of the Prepetition Collateral), shall be charged against or recovered from or against the Secured Parties, the Adequate Protection Collateral, the Prepetition Collateral, or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise.  The Debtors' professionals waive any rights pursuant to section 506(c) of the Bankruptcy Code or otherwise (to the extent any such right exists) to charge any professional fees against or recover from or against any or all the Secured Parties, the Adequate Protection Collateral, the Prepetition Collateral and the Cash Collateral.

11.   Rights Under Sections 363(k) and 1129.  Subject to the entry of the Final Order, the full amount of the Prepetition Notes Obligations may be used to "credit bid" for the assets and property of the Debtors as provided for in section 363(k) of the Bankruptcy Code in accordance with the terms of the Prepetition Notes Documents without need for further Court order authorizing the same and whether such sale is effectuated through section 363 and/or section 1129 of the Bankruptcy Code or otherwise because, among other things, the denial of such rights would result in the Prepetition Notes Obligations not receiving the indubitable equivalent of their claims.

12.   Proofs of Claim.  Notwithstanding anything to the contrary contained herein or in any prior or subsequent order of the Court, neither the Noteholders nor the Trustee shall be required to file any proof of claim with respect to the Prepetition Notes Obligations or any obligations hereunder, all of which shall be due and payable in accordance with the Prepetition Notes Documents or this Interim Order, as applicable, without the necessity of filing any such proof of claim, and the failure to file any such proof of claim shall not affect the validity or enforceability of any such Prepetition Notes Documents, this Interim Order, the Prepetition

Notes Obligations or any other obligations hereunder, or prejudice or otherwise adversely affect the rights, remedies, powers or privileges of the Noteholders or the Trustee under the applicable Prepetition Notes Documents or this Interim Order; provided, further, that, for the avoidance of doubt, the filing of any proof of claim by the Noteholders or the Trustee shall not in any way prejudice or otherwise adversely affect such parties' rights, remedies, powers, or privileges under the Prepetition Notes Documents or this Interim Order.

13. <u>Disposition of Adequate Protection Collateral</u>.   The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral or Adequate Protection Collateral outside the ordinary course of business without the prior written consent of the Trustee and the Ad Hoc Group (and no such consent shall be implied from any other action, any order of this Court, or inaction or acquiescence by the Trustee or the Ad Hoc Group).   If requested to do so by the Ad Hoc Group, the Debtors shall use their best efforts (subject to applicable law, including, without limitation, the Debtors' fiduciary duties thereunder) to assist and cooperate in the sale of the Collateral, including by seeking approval of a sale of substantially all of their assets pursuant to section 363(b) of the Bankruptcy Code.

14. <u>Rights and Remedies Upon Event of Default</u>.

(a) <u>Events of Default</u>.  Each of the following events shall constitute an event of default (collectively, the "<u>Events of Default</u>"):

    i.    the incurrence or payment by the Debtors of any expenses other than in accordance with the Approved Budget (subject to the Permitted Variance);

    ii.    if the Debtors' cash on hand is less than $6,500,000;

    iii.    except as provided herein, actual incurrence or payment by the Debtors of any fees, expenses or obligations in excess of the line-item amount budgeted for such fees, expenses or obligations in the Approved Budget (subject to the Permitted Variance);

iv.   the entry of an order by the Court invalidating, disallowing, avoiding, recharacterizing, subordinating, offsetting or limiting in any respect, as applicable, either (A) the legality, enforceability, priority, validity and binding nature of the Prepetition Liens or Adequate Protection Replacement Liens securing the Prepetition Notes Obligations or (B) any of the Prepetition Notes Obligations or Adequate Protection Priority Claims;

v.   the incurrence after the Petition Date of indebtedness that is: (A) secured by a security interest, mortgage, collateral interest or other lien on all or any portion of the Prepetition Collateral or the Adequate Protection Collateral senior to the liens of the Secured Parties; or (B) entitled to administrative priority status senior to the liens or claims of the Secured Parties (except, in the case of this clause (B) indebtedness incurred in the ordinary course of business with a priority that is junior to the claims granted to the Secured Parties), unless any such indebtedness is used to immediately refinance and pay the Prepetition Notes Obligations indefeasibly in full in cash;

vi.   the entry of a final order by the Court, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on or security interest in any Prepetition Collateral that has a material effect on the Debtors' business;

vii.   the reversal, vacatur, modification, supplement, extension or amendment (without the express prior written consent of the Secured Parties, in their sole discretion) of this Order;

viii.   the entry by the Court of an order, or the filing by a Debtors of a motion which seeks entry of an order: (A) dismissing the Case; (B) converting the Case to a case under chapter 7 of the Bankruptcy Code; or (C) appointing a trustee or examiner with the expanded powers to operate the Debtors' business pursuant to section 1104 of the Bankruptcy Code (without Secured Parties' consent);

ix.   the Debtors' failure to remain current on any postpetition obligation, fees, or failure to pay any ordinary course or trade payables within 60 days of invoicing;

x.   failure to comply with the Reporting Requirements set forth in paragraph 4(d) of this Order

xi.   failure to make any of the adequate protection provided by paragraph 4(c) of this Order;

xii.   failure of the Debtors to obtain an order of the Court approving bidding procedures with such order in a form and substance acceptable to the Ad Hoc Group which, among other things, authorize the Debtor to market for

sale, and solicit bids for the purchase of, substantially all of their assets (a "Bid Procedures Order") on or prior to May 29, 2015;

xiii.   any failure by the Debtors to comply with the terms of the Bid Procedures Order;

xiv.   the failure of the Debtors to conduct an auction (an "Auction") for the sale of substantially all of their assets on or prior to sixty (60) days after the entry of the Bid Procedures Order;

xv.   the failure of the Debtors to obtain an order of the Court approving the sale by the Debtors of substantially all of their assets (the "Sale Order") on or prior five (5) days after the Auction, with such order in a form and substance acceptable to the Ad Hoc Group;

xvi.   the filing by the Debtors of any motion with the Bankruptcy Court that seeks relief that is inconsistent with the relief contemplated by the Sale Order described herein without the consent of the Ad Hoc Group; or

xvii.   any material breach by the Debtors of any of the obligations, representations, warranties or covenants set forth in this Order, which material breach is not cured on or within three (3) business days after giving of written notice of such breach to the Debtor, if applicable, on or within the cure period, if any, provided for under this Order.

(b)   If an Event of Default occurs, notice of which has been provided to the Debtors by the Secured Parties, the Debtors' ability to use Cash Collateral shall automatically terminate for all purposes at the end of the third (3rd) business day (the "Default Notice Period") following the giving of notice of such Event of Default (a "Termination Notice"), unless the Debtors have, prior to the expiration of the Default Notice Period, cured such Event of Default (the "Termination Date"); provided, however, that during the Default Notice Period, any Cash Collateral, including proceeds of Adequate Protection Collateral shall only be used in accordance with the Approved Budget; and the Debtors are only permitted to utilize Cash Collateral in conformance with the expense line items in the Approved Budget.

(c)   Unless otherwise ordered by the Court, the automatic stay provisions of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Secured

parties to exercise, upon the occurrence of a Termination Date, all rights and remedies provided for hereunder, and to take any or all of the following actions without further order or application to this Court: (i) terminate the Debtors' use of Cash Collateral; (ii) declare all Adequate Protection Priority Claims owed to the Secured Parties to be immediately due and payable; (iii) set off and apply immediately any and all amounts in accounts maintained by the Debtors with any Secured Parties against the Adequate Protection Priority Claims owed to the Secured Parties; and (iv) take any other actions or exercise any other rights or remedies permitted under this Order or applicable law to effect the repayment and satisfaction of the Adequate Protection Priority Claims owed to the Secured Parties; provided, however, that the Ad Hoc Group or the Trustee, as applicable, shall provide three (3) business days written notice (the "Waiting Period") (by facsimile, telecopy, electronic mail, or otherwise) to the U.S. Trustee, counsel to the Debtors and counsel to the Committee prior to exercising any enforcement rights or remedies in respect of the Prepetition Collateral and/or Adequate Protection Collateral (other than the rights described in clauses (a) or (b) above (to the extent they might be deemed remedies in respect of the Collateral and/or Adequate Protection Collateral) and other than with respect to freezing any deposit accounts or securities accounts maintained by either the Trustee or the Debtors).   The rights and remedies of the Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have.   The Noteholders will not object to any request by the Debtors for an expedited hearing during the Waiting Period provided the Debtors' actions and the relief requested is not prohibited under the terms of this Order.

15.     Preservation of Rights Granted Under this Order.

(a)     Dismissal.   If any order dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance

with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that the Adequate Protection shall continue in full force and effect and shall maintain the priorities as provided in this Order until all of the Prepetition Notes Obligations have been indefeasibly paid in full in cash or are otherwise satisfied in full (and that the Adequate Protection shall, notwithstanding such dismissal, remain binding on all parties in interest).

(b)     Survival of Order. The provisions of this Order, any actions taken pursuant hereto, the Adequate Protection and all other rights, remedies, liens, priorities, privileges, protections and benefits granted to the Secured Parties shall survive, and shall not be modified, impaired or discharged by, the entry of any order confirming a plan of reorganization in the Chapter 11 Cases, converting the Chapter 11 Cases to a case under chapter 7, dismissing the Chapter 11 Cases, withdrawing the reference of the Chapter 11 Cases or any successor case(s) or providing for abstention from handling or retaining of jurisdiction of the Case in this Court, or by any other act or omission.  The terms and provisions of this Order, including the Adequate Protection and all other rights, remedies, liens, priorities, privileges, protections and benefits granted to the Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such Adequate Protection shall continue in these proceedings and in any successor case, and shall maintain its priority as provided by this Order.

(c)     Binding Effect.  The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Secured Parties, any Committee, and the Debtors and its respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of the Debtors or with respect to the property of the

estate of the Debtors), whether in the Chapter 11 Cases, in any successor cases, or upon dismissal of any such Chapter 11 Cases or successor case, provided, however, that the Debtors' authorization to use of Cash Collateral hereunder, shall terminate upon the appointment of any chapter 7 or 11 trustee, examiner with expanded powers, or similar responsible person appointed for the estates of the Debtors.

(d)  No Waiver. The failure of the Secured Parties to seek relief or otherwise exercise its rights and remedies under this Order, the Prepetition Notes Documents or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of the Secured Parties' rights hereunder, thereunder, or otherwise.  Except as expressly provided herein, nothing contained in this Order (including, without limitation, the authorization of the use of any Prepetition Collateral, including, without limitation, Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Secured Parties, to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of the Debtors to contest such assertion).  The entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the Secured Parties under the Bankruptcy Code or non-bankruptcy law to: (i) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to the Debtors; or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the Secured Parties.

(e)  No Third Party Rights. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  In determining to permit the use of Prepetition Collateral,

including, without limitation, the Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Order, the Secured Parties shall not: (i) be deemed to be in control of the operations of the Debtors; or (ii) owe any fiduciary duty to the Debtors, its creditors, shareholders or estate.

(f)     No Marshaling.  The Debtors shall not attempt to subject the Secured Parties to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Adequate Protection Collateral or the Prepetition Collateral, as applicable.

(g)     Amendments.  No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of the Debtors and the Secured Parties and, except as provided herein, approved by this Court.  The Secured Parties may, without further notice, motion or application to, order of, or hearing before this Court, in its sole and absolute discretion, waive (including on a temporary basis), or forebear from exercising remedies with respect to (including on a temporary basis), any Event of Default.

(h)     Inconsistency.   In the event of any inconsistency between the terms and conditions of the Prepetition Notes Documents and the terms and conditions of this Order, the provisions of this Order shall govern and control.

(i)     Enforceability.  This Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable retroactive to the Petition Date immediately upon execution hereof.   Notwithstanding Bankruptcy Rules 4001(a)(3), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Order.

(j)     <u>Headings</u>.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

(k)     <u>Automatic Stay</u>. The automatic stay imposed pursuant to Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of this Order as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and to incur all liabilities and obligations to the Secured Parties under this Order and (ii) otherwise to the extent necessary to implement and effectuate the provisions of this Order.

16.     <u>Final Hearing</u>.  The Final Hearing shall take place on [ _____ ] at [ _____ ] (Prevailing Mountain Time).  Objections to the relief requested in the Motion shall be filed and served no later than 4:00 p.m. (Prevailing Mountain Time) on [ ___ ],  2015   (the   "<u>Objection Deadline</u>").   The failure of any objecting person or entity to timely file its objection by the Objection Deadline shall be a bar to the assertion, at the Final Hearing or thereafter, of any objection to the entry of an order granting the Debtors' use of Cash Collateral, the granting of Adequate Protection to the Secured Parties, and all other relief requested in the Motion.

17.     <u>Service</u>.  The Debtors shall serve notice of entry of this Order and a copy of the Order on [all creditors and parties-in-interest] within five (5) days of entry of this Order and file a certificate of service with the Court.

18.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Order according to its terms.


#### END OF ORDER ###

# EXHIBIT "B"

American Eagle Energy Corporation
Weekly Cash Forecast
Summary

| Week | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Week Ended | 5/16/15 | 5/23/15 | 5/30/15 | 6/6/15 |
| Beginning Cash | $ 8,496,615 | $ 6,961,432 | $ 8,422,466 | $ 7,696,452 |
| **Sources:** | | | | |
| Operated Revenue Receipts | - | 2,315,060 | - | - |
| Non-Operated Revenue Receipts | - | 97,609 | - | - |
| Joint Interest Billing (JIB) Collections | 88,596 | 455,921 | 28,396 | 27,981 |
| **Uses:** | | | | |
| Capital Expenditures | (47,619) | (47,619) | (47,619) | (59,524) |
| Lease Operating Expenses | (1,190,529) | - | - | (325,000) |
| Revenue Distributions - Current | (331,331) | (1,355,897) | - | - |
| Revenue Distributions - Suspense Wells | - | - | - | (3,911) |
| Cash G&A | (54,100) | (2,000) | (706,791) | (20,500) |
| Interest Payment | - | - | - | - |
| Ending Cash | $ 6,961,432 | $ 8,422,466 | $ 7,696,452 | $ 7,315,499 |
| Ending Revenue Receivables | $ 5,604,744 | $ 4,640,621 | $ 4,867,376 | $ 5,148,382 |
| Ending JIB & Misc. Receivables | $ 2,908,720 | $ 2,568,926 | $ 2,653,458 | $ 2,761,184 |
| Ending Total Net Receivables | $ 8,513,464 | $ 7,208,548 | $ 7,520,885 | $ 7,909,566 |
| Cash Collateral | $ 15,474,896 | $ 15,651,414 | $ 15,217,287 | $ 15,225,065 |

# EXHIBIT "B"

American Eagle Energy Corporation
Weekly Cash Forecast
Vendor Payments

| Week | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Week Ended | 5/16/15 | 5/23/15 | 5/30/15 | 6/6/15 |
| Total Capital Expenditures | $ (47,619) | $ (47,619) | $ (47,619) | $ (59,524) |
| | | | | |
| LOE Payments: | | | | |
| May-2015 | (1,190,529) | | | (325,000) |
| Jun-2015 | | | | |
| Jul-2015 | | | | |
| Aug-2015 | | | | |
| Sep-2015 | | | | |
| Oct-2015 | | | | |
| Nov-2015 | | | | |
| Dec-2015 | (1,190,529) | - | - | (325,000) |

## EXHIBIT "B"

American Eagle Energy Corporation
Weekly Cash Forecast
G&A

| Week | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Week Ended | 5/16/15 | 5/23/15 | 5/30/15 | 6/6/15 |
| **Cash Items:** | | | | |
| Payroll & 401K | $ - | $ - | $ 199,191 | $ - |
| Employee Benefit Insurance | 12,100 | - | 20,600 | - |
| Office Rent | - | - | - | 2,000 |
| Office Expenses | 2,000 | 2,000 | 2,000 | 2,000 |
| Travel, Meals & Entertainment | 20,000 | - | - | - |
| NYSE & SEC Fees & Filing Fees/Services | - | - | - | 15,000 |
| IT & Computer Expenses | - | - | - | - |
| Directors Fees | - | - | - | - |
| Other | 10,000 | - | - | - |
| Insurance (paid in January) | - | - | - | - |
| Accounting Fees | 10,000 | - | - | 3,500 |
| North Dakota State Taxes | - | - | - | - |
| | 54,100 | 2,000 | 221,791 | 20,500 |
| **Professional Fees:** | | | | |
| Legal Fees - Baker Hostetler | - | - | - | - |
| Legal Fees - Roberts & Olivia | - | - | - | - |
| Legal Fees - Other | - | - | - | - |
| Consulting Fees | - | - | - | - |
| Financial Advisor Fees - Canaccord | | | 35,000 | |
| Financial Advisor Fees - Walter Jones | - | - | 400,000 | - |
| Legal Fees - Andrews Kurth | | | 50,000 | |
| Legal Fees - Noteholders CO counsel | | | | |
| Trustee Fees | | | | |
| | - | - | 485,000 | - |
| **Total G&A** | $ 54,100 | $ 2,000 | $ 706,791 | $ 20,500 |