## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| American Eagle Energy Corporation | ) | Case No.  15-15073-HRT |
| Tax ID / EIN: 20-0237026 | ) | |
| | ) | |
| AMZG, Inc. | ) | Case No. 15-15074-HRT |
| Tax ID / EIN: 20-8642477 | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

---

**SECOND INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL
PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (II) PROVIDING
ADEQUATE PROTECTION TO SECURED PARTIES PURSUANT TO
SECTIONS 361, 362, AND 363 OF THE BANKRUPTCY CODE, AND
(III) SCHEDULING FINAL HEARING**

This matter is before the Court on (i) the motion (the "Motion"),[1] dated May 10, 2015, of

American Eagle Energy Corporation ("American Eagle") as debtor and debtor in possession, and

AMZG, Inc. ("AMZG"), (together with American Eagle, the "Debtors"), its affiliated debtor and

debtor in possession for entry of: (i) an order (the "Interim Order") authorizing the Debtors to

use Cash Collateral (as hereinafter defined) pursuant to section 363 of title 11 of the United

States Code (the "Bankruptcy Code") on an interim basis pending a final hearing on the Motion

(the "Final Hearing") and entry of a final order (the "Final Order"); (ii) granting adequate

protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code to the Secured Parties

(as hereinafter defined) with respect to, among other things, such use of Cash Collateral and any

diminution in the value of the Collateral (as hereinafter defined); and (iii) in accordance with

Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

requesting that this Court schedule the Final Hearing and (ii) the agreement by the Debtors, the Ad Hoc Group, the Trustee, and the Committee to continue the Final Hearing until June 11, 2015; and the Court having considered the Motion and the exhibits attached thereto, including, without limitation, the Approved Budget (as hereinafter defined); and a hearing to consider approval of the Motion on an interim basis having been held and concluded on May 12, 2015 (the "First Interim Hearing") and on May 28, 2015 (the "Second Interim Hearing" and, together with the First Interim Hearing, the "Interim Hearings"); and upon the pleadings filed with, and the proceedings held before, the Court; and, after due deliberation, sufficient cause appearing therefor, the Court makes the following findings of fact and conclusions of law:

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

A.      Petition Date.  On May 8, 2015 (the "Petition Date"), the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code with this Court.  The Debtors have continued in the management and operation of their business and property pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      Jurisdiction and Venue.  This Court has core jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected thereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice.  Notice of the Motion and the relief requested therein was served by the Debtors on its twenty largest unsecured creditors, the Secured Parties and the Office of the United States Trustee (the "U.S. Trustee").  Under the circumstances, such notice constitutes due and sufficient notice.

D.      Committee Formation.  A committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") was appointed on May 15, 2015.

E.      First Interim Order. On May 15, 2015, the Court entered an Interim Order (i) Authorizing use of Cash Collateral Pursuant to Section 363(b) of the Bankruptcy Code, (ii) Providing Adequate Protection to Secured Parties Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code, and (iii) Scheduling a Final Hearing [Docket No. 27] (the "First Interim Order"). The First Interim Order authorizes the Debtors to use the Secured Parties' (as defined below) Cash Collateral subject to the terms and conditions set forth therein.

F.      Second Interim Hearing. On May 28, 2015, the Court held the Second Interim Hearing for the purpose of considering the Debtors' request for entry of: (i) a second order (the "Second Interim Order") authorizing the Debtors to use Cash Collateral (as hereinafter defined) pursuant to section 363 of title 11 of the Bankruptcy Code on a further interim basis pending a Final hearing and entry of a Final Order; (ii) granting adequate protection pursuant to sections 361, 362, and 363 of the Bankruptcy Code to the Secured Parties (as hereinafter defined) with respect to, among other things, such use of Cash Collateral and any diminution in the value of the Collateral (as hereinafter defined); and (iii) in accordance with Rule 4001(b) of the Bankruptcy Rules, requesting that this Court schedule the Final Hearing.

G.      Debtors' Stipulations. The Debtors hereby admit, stipulate, acknowledge and agree as follows (collectively, the "Stipulations"):

(i)      Prepetition Notes Documents: on August 27, 2014, the Debtors entered into (i) that certain Credit Agreement among American Eagle, as borrower, AMZG, as guarantor, the Lenders (as defined therein), SunTrust Bank, as Administrative Agent and Issuing Bank, and SunTrust Robinson Humphrey, Inc., as Bookrunner and Sole Lead Arranger (the "SunTrust Credit Agreement"); and (ii) that certain Indenture (the "Indenture" and, together with all other agreements and documents delivered pursuant thereto or in connection therewith, the

NYC:337590.2

"Prepetition Notes Documents") among American Eagle, as issuer, AMZG, as guarantor, and U.S. Bank National Association as Trustee and Collateral Agent (in such capacities, the "Trustee"). Pursuant to the Indenture and the Prepetition Notes Documents, the Debtors incurred indebtedness to the holders of the 11.0% Senior Secured Notes due 2019 (the "Noteholders" and, together with the Trustee, the "Secured Parties") issued pursuant to the Indenture (the "Senior Secured Notes"). At no time did the Debtors borrow funds under the SunTrust Credit Agreement. On April 2, 2015, the Debtors received notice from SunTrust that, among other things, all Commitments (as defined in the SunTrust Credit Agreement) have terminated and neither SunTrust nor the Lenders (as defined in the SunTrust Credit Agreement) have any further commitment or other obligation to make Loans (as defined in the SunTrust Credit Agreement) to, or issue Letters of Credit (as defined in the SunTrust Credit Agreement) on behalf of, the Debtors.

       (ii)     Obligations to Secured Parties: As of the Petition Date, the Debtors were indebted and liable to the Secured Parties, without objection, defense, counterclaim, or offset of any kind, under the Prepetition Notes Documents, in the aggregate amount of not less: (i) $175,000,000 in aggregate principal amount; (ii) all accrued and unpaid interest; and (iii) additional amounts owed under the Prepetition Notes Documents including, but not limited to, defaulted interest, interest on defaulted interest, fees, expenses, costs, charges, premiums, make-whole, prepayment, yield maintenance or similar amounts payable pursuant to the Indenture or the Prepetition Notes Documents, and all other amounts due and owing under the Prepetition Notes Documents (collectively, the "Prepetition Notes Obligations").

       (iii)    Prepetition Liens and Collateral: Pursuant to the Prepetition Notes Documents, the Debtors granted to the Secured Parties, to secure the Prepetition Notes

Obligations, a security interest in and continuing lien on (the "Prepetition Liens") all of the Debtors' assets and property (the "Prepetition Collateral").   As of the Petition Date, the Prepetition Notes Obligations and the Prepetition Liens: (a) are legal, valid, binding, enforceable, non-avoidable and perfected liens; (b) were granted to, or for the benefit of, the Secured Parties for fair consideration and reasonably equivalent value; (c) are not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (d) are secured by first priority security interest in the Prepetition Collateral and are subject and subordinate only to valid, perfected and unavoidable liens permitted under the Prepetition Notes Documents, to the extent such permitted liens are senior to the liens securing the Prepetition Notes Obligations ("Permitted Prior Liens");[2] and

(iv)    Cash Collateral.  The Debtors acknowledge that all of the Debtors' cash, including the cash in its deposit accounts, wherever located, whether Prepetition Collateral or proceeds of Prepetition Collateral, constitutes the Cash Collateral of the Secured Parties.

H.    Need to Use the Prepetition Collateral (including, without limitation, the Cash Collateral).  The Debtors contend that they have an immediate need to use the Prepetition Collateral, including, without limitation, the Cash Collateral, among other things, to: permit the orderly continuation of the operation of its business, maintain business relationships with vendors, suppliers and customers, make payroll, make necessary and required capital expenditures and to satisfy other operational needs.   The Debtors contend that access to

---

[2] For purposes of this Order, Permitted Prior Liens shall include any liens that are Permitted Liens under the Indenture and liens that are senior to the Prepetition Liens under applicable law and are otherwise valid, senior, enforceable, perfected and non-avoidable under applicable law as of the Petition Date.  Nothing herein shall constitute a finding or ruling by this Court that any such liens are actually valid, senior, enforceable, perfected or non-avoidable.

NYC:337590.2

sufficient working capital and liquidity through the use of Cash Collateral is of vital importance to maximizing the value of the Debtors' assets and business for the benefit of the Debtors' estate and creditors.

I.      Adequate Protection for the Secured Parties.  The Secured Parties are entitled to the adequate protection set forth herein pursuant to sections 361, 362 and 363 of the Bankruptcy Code, including for any diminution in the value of all Prepetition Collateral, including Cash Collateral.  Based on the Motion, the terms of the proposed adequate protection arrangements and use of the Prepetition Collateral, including, without limitation, the Cash Collateral, contemplated hereby are fair and reasonable, reflect the Debtors' sound and prudent exercise of their business judgment, and constitute reasonably equivalent value and fair consideration for the limited consent of the Trustee and the Ad Hoc Group and are in all respects consistent with the provisions of the Bankruptcy Code and applicable law.

J.      Limited Consent.  The Trustee and the Ad Hoc Group have consented to the Debtors' use of the Prepetition Collateral, including the Cash Collateral, solely pursuant to the terms of this Second Interim Order.  Nothing in this Second Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a final finding that the interests of the Secured Parties are or will be adequately protected with respect to use by the Debtors of Prepetition Collateral including, without limitation, the Cash Collateral.

K.      Section 552(b).  As a result of the limited consent for the use of its Cash Collateral for payments made in accordance with the Approved Budget (as defined below), the Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy

NYC:337590.2

Code.  Subject to entry of the Final Order, the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Secured Parties.

L.     Good Faith.  Based on the record before the Court, the terms of the use of the Cash Collateral as provided in this Second Interim Order have been negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates, and creditors.

M.     Consideration.  The Debtors will receive and have received fair consideration and reasonably equivalent value in exchange for use of Cash Collateral and all other financial accommodations provided under this Second Interim Order.

N.     Immediate Entry of Second Interim Order.  For the reasons stated above, the Debtors have requested immediate entry of this Second Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and the Local Bankruptcy Rules.  Absent granting the relief set forth in this Second Interim Order, the Debtors' business, assets and estate will be immediately and irreparably harmed.  This Court concludes that authorization to use the Prepetition Collateral including, without limitation, the Cash Collateral, in accordance with this Second Interim Order is therefore in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing business during the pendency of these Chapter 11 Cases.

**NOW, THEREFORE**, on the Motion, the foregoing findings, acknowledgements and conclusions, and upon the record made before the Court at the Interim Hearings, and good and sufficient cause appearing therefore,

**IT IS ORDERED** that:

NYC:337590.2

1.      Motion Granted.  The Motion is hereby granted on a further interim basis in accordance with the terms and conditions set forth in this Second Interim Order.  Any objections to the Motion with respect to the entry of this Second Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      Use of the Prepetition Collateral (including, without limitation, the Cash Collateral).  Subject to the terms and conditions of this Second Interim Order, the Debtors are authorized, pursuant to section 363 of the Bankruptcy Code, to use the Cash Collateral.  The Debtors are prohibited from using Cash Collateral other than in accordance with the terms and conditions of this Second Interim Order and the Approved Budget (as defined below).  If the Final Order has not been entered by 5:00 p.m. (Prevailing Mountain Time) on June 12, 2015 (the "Cash Collateral Termination Date"), the Debtors shall be prohibited, without the necessity of further Court order, from using Cash Collateral under the terms of this Second Interim Order.

3.      Cash Collateral Budget.

(a)      Approved Budget.  Attached hereto as Exhibit "A" is the budget (the "Approved Budget") which reflects, on a line-item basis upcoming operating expenses of the Debtors for the weeks ending May 30, 2015, June 6, 2015, and June 13, 2015 (the "Approved Budget Period").  The Debtors' use of Cash Collateral is subject to and governed by the terms of the Approved Budget and the Secured Parties shall have no obligation to permit the use of Cash Collateral hereunder other than in accordance with the Approved Budget and as set forth in this Second Interim Order; provided, however, that: (i) with respect to each use of Cash Collateral identified

in the Approved Budget,[3] the Debtors shall be permitted to use Cash Collateral in an amount of up to ten percent (10%) over the amount originally identified in the Approved Budget for each such use of cash, which shall be measured at the end of each week for each line item by reference to: (a) the aggregate amount of Cash Collateral actually used by the Debtors cumulatively through the end of such week in the Approved Budget Period for such line item; and (b) the aggregate amount of Cash Collateral originally budgeted in the Approved Budget cumulatively through the end of such week in the Approved Budget Period for such line item (the "Permitted Uses of Cash Variance"); and (ii) with respect to the "Total Cumulative Payments" reflected for each week in the Approved Budget Period, the Debtors shall be permitted to use Cash Collateral in an amount of up to five percent (5%) over the originally identified amount in the Approved Budget (the "Total Cumulative Payments Variance" and, together with the Permitted uses of Cash Variance, the "Permitted Variance").

(b)     Enforceable Obligations. Subject to Paragraph 8 hereof, no obligation, payment, transfer or grant of security under this Second Interim Order shall be: (i) stayed, restrained, voidable, avoidable or recoverable under any section of the Bankruptcy Code or any other applicable law; or (ii) subject to avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or any other challenge under any section of the Bankruptcy Code or any other applicable law by any person or entity.

4.     Adequate Protection for Secured Parties.   In consideration for the use of the Prepetition Collateral, including the Cash Collateral, from and after the Petition Date and the

---

[3] Such uses of Cash Collateral are (i) Vendor Payments; (ii) Lease Operating Payments; (iii) Revenue Distributions – Current; (iv) Revenue Distributions – Suspense Wells; and (v) Cash G&A.

limited consent to the entry of this Second Interim Order, the Secured Parties shall receive the following adequate protection (collectively, the "Adequate Protection"):

(a)     Replacement Liens and Superpriority Claim.   To the extent the use of the Prepetition Collateral causes or results in any diminution in value of the interest of the Secured Parties in the Prepetition Collateral including, without limitation, the Cash Collateral, from and after the Petition Date, the Trustee, for itself and for the benefit of the Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361 and 363 of the Bankruptcy Code, replacement liens upon all property of the Debtors now existing or hereafter acquired including, without limitation, all Cash Collateral, cash and cash equivalents, and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds, real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, capital stock of subsidiaries, tax and other refunds, insurance proceeds, commercial tort claims, all other Prepetition Collateral and all other "property of the estate" (within the meaning of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements and cash and non-cash proceeds of all of the foregoing, and, to the extent allowed under the Final Order (x) rights under section 506(c) of the Bankruptcy Code and (y) avoidance actions under chapter 5 of the Bankruptcy Code and all cash and non-cash proceeds of the foregoing (all of the foregoing collateral

collectively referred to as the "Adequate Protection Collateral" and such adequate protection replacement liens, the "Adequate Protection Replacement Liens"). The Adequate Protection Replacement Liens on such Adequate Protection Collateral and the Adequate Protection Priority Claims shall be subject and subordinate only to the extent applicable: (i) the Permitted Prior Liens; and (ii) on and after the occurrence of a Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth herein.

(b)     Administrative Expense Claim.   Pursuant to sections 361 and 363 of the Bankruptcy Code, to the extent the use of the Prepetition Collateral causes, or results in, any diminution in value of the interest of the Secured Parties in the Prepetition Collateral including, without limitation, the Cash Collateral, from and after the Petition Date, the Secured Parties are hereby granted an administrative expense claim pursuant to section 503(b) of the Bankruptcy Code.

(c)     Adequate Protection Priority Claims.  To the extent provided for in section 507(b) of the Bankruptcy Code, to the extent of any diminution in value of the interest of the Secured parties in the Prepetition Collateral, including, without limitation, the Cash Collateral, the Trustee, for the benefit of the Secured Parties, subject to the Carve-Out (as defined herein), shall be granted first priority superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (the "Adequate Protection Priority Claims").

(d)     Adequate Protection Payment.   Subject to Paragraph 8 of this Second Interim Order, as adequate protection to the Secured Parties, the Debtors are authorized and directed to pay: (A) to the Ad Hoc Group, ongoing payment in cash on a current basis, no less than monthly, and including any amounts incurred prior to the Petition Date, of their reasonable and documented fees, costs and expenses in connection with the Chapter 11 Cases (including,

without limitation, the reasonable fees and expenses of: (i) Andrews Kurth LLP and local counsel, as counsel to the Ad Hoc Group; (ii) Walter A. Jones and his agents, affiliates and/or successors as financial advisor to the Ad Hoc Group (collectively, "Walter A. Jones"); and (iii) any expert witness retained by the Ad Hoc Group in connection with these Chapter 11 Cases); and (B) to the Trustee, ongoing payment in cash on a current basis, no less than monthly, and including any amounts incurred prior to the Petition Date, of the reasonable and documented fees, costs and expenses of the Trustee in connection with the Chapter 11 Cases (including, without limitation, the reasonable fees and expenses of Kelley Drye & Warren LLP as counsel to the Trustee). All of the amounts to be paid pursuant to the foregoing clauses (A) and (B) shall be paid regardless of whether such amounts accrued prior to the Petition Date (if any such amounts have accrued and are unpaid) or after the Petition Date, whether or not such amounts are included in the Approved Budget (and the Approved Budget shall be adjusted accordingly), and shall be paid upon presentment to the Debtors without further motion, fee application, or order of the Court.

(e)     Reporting Requirements. As further adequate protection, the Debtors shall deliver to the professionals of the Trustee and the professionals of the Ad Hoc Group, for review and reconciliation with the Approved Budget by Walter A. Jones:

i.     each Monday unless such day is a federal holiday and then on the first business day of each week: (i) a weekly report of receipts, disbursements, and a reconciliation of actual expenditures and disbursements with those set forth in the Approved Budget, showing any variance to the proposed receipts and disbursements set forth in the Approved Budget (the "Budget Reconciliation"); (ii) an accounts receivable aging report; and (iii) a report of accounts payable and liabilities accrued from the Petition Date through the date of such report;

ii.     promptly, but in no event later than three (3) days after receipt by the Debtors (or such shorter period as may be necessary in order to ensure adequate time to substantively respond), copies of any notice of default, breach, termination or similar notice under any joint operating agreement,

12

lease, loan agreement, note, or other contract or agreement to which either or both of the Debtors are parties; and

    iii.    all other information, reports, documents and other material requested by the Trustee or the Ad Hoc Group within five (5) days of the Debtors' receipt of such request.

(f)    <u>Inspection Rights</u>.  In addition to any inspection rights under the Prepetition Notes Documents, upon reasonable notice and at such reasonable times during normal business hours and otherwise as may be reasonably requested, the Debtors shall permit any representatives designated by the Trustee or the Ad Hoc Group to visit and inspect any of their properties, to inspect, copy, and take extracts from their financial and accounting records, to have reasonable access to all records and files of the Debtors pertaining to the Prepetition Collateral and the Adequate Protection Collateral, and to discuss their affairs, finances, and accounts with their officers, financial advisors, and independent accountants.

(g)    <u>Right to Seek Additional Adequate Protection</u>.  Nothing herein shall be deemed to be a final finding by the Court or an admission by the Secured Parties that the Secured Parties are adequately protected for the use of the Prepetition Collateral (including, without limitation, the Cash Collateral) as provided by this Second Interim Order. The Secured Parties may request Court approval for additional or alternative adequate protection, without prejudice to any objection of the Debtors or any other party in interest to the grant of any such additional or alternative adequate protection.

(h)    <u>Debtors Jointly and Severally Liable</u>.  The Debtors shall be each jointly and severally liable for administrative expense claims and Adequate Protection Priority Claims of the Secured Parties arising hereunder.

5.    <u>Carve-Out</u>.  As used in this Second Interim Order, the "Carve-Out" means: (a) the unpaid quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a), together with interest

NYC:337590.2

payable thereon pursuant to applicable laws and any fees payable pursuant to the Clerk of the Bankruptcy Court; (b) the allowed and reasonable fees and expenses of professionals employed by the Debtors and the Committee pursuant to sections 327, 328 and 1103 of the Bankruptcy Code (i) if incurred prior to the occurrence of the Termination Date (as defined herein) up to the amounts set forth in the Approved Budget under the line item for each professional and (ii) if incurred following the occurrence of the Termination Date, up to an amount not to exceed $250,000 in the aggregate (excluding any retainers paid to the Debtors' professionals prior to the Petition Date). Notwithstanding anything to the contrary contained herein, the Carve-Out shall not include, apply to, or be available for any fees or expenses incurred by any party, including the Debtors or the Committee, or their respective professionals, in connection with, or relating to, the investigation initiation or prosecution of any claims, causes of action or other litigation against any of the Secured Parties, including without limitation, challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim, or offset to, the Prepetition Notes Obligations, the Prepetition Notes Documents, or the Adequate Protection Liens or Adequate Protection Priority Claims; provided, however, that subject to the Final Order, the Committee, if any, may use up to $20,000 (the "Investigation Fund") to investigate (the "Investigation") the liens and claims of the Secured Parties, but may not use the Investigation Fund to initiate, assert, join, commence, support or prosecute any actions or discovery with respect thereto.

6.   Automatic Post-Petition Lien Perfection.   This Second Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the Adequate Protection Replacement Liens without the necessity for: (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may

otherwise be required under the law of any jurisdiction; or (b) taking any other action to validate or perfect the Adequate Protection Replacement Liens or to entitle such Adequate Protection Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, the Noteholders may seek to direct the Trustee to file financing statements, mortgages, security agreements, notices of liens and other similar documents for the benefit of the Noteholders, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded on the Petition Date to the extent filed or recorded by the Trustee. The Trustee is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to file any such financing statements, mortgages, security agreements, notices and other agreements or documents. The Debtors shall execute and deliver to the Secured Parties all such financing statements, mortgages, notices and other documents as it may reasonably request to evidence and confirm the contemplated priority of the Adequate Protection Replacement Liens granted pursuant hereto. Without limiting the foregoing, the Secured Parties, in their sole discretion, may file a photocopy of this Second Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Second Interim Order. Any provision of any contract or agreement that requires the payment of any fees or obligations to any entity in order for the Debtors to grant liens on the Adequate Protection Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code.

NYC:337590.2

7.      Continuation of Prepetition Liens.  For so long as this Second Interim Order

remains in effect, the Prepetition Liens of the Secured Parties in the Prepetition Collateral shall

remain valid and perfected to the same extent, validity and priority as of the Petition Date,

without the necessity for the Secured Parties to file any continuation statement, financing

statement, deed of trust, mortgage, or other instrument or document which may otherwise be

required under the law of any jurisdiction.

8.      Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(a)      Parties in interest in this case (other than the Debtors) shall be permitted to

challenge the Stipulations up to and including the day that is thirty (30) days after entry of this

Second Interim Order (the "Challenge Deadline").  The Challenge Deadline for Hydratek, Inc.

shall be ninety (90) days after entry of this Second Interim Order.  The Committee shall be

permitted to challenge the Stipulations up to and including the day that is thirty (30) days after

the formation of the Committee (the "Committee Challenge Deadline").  Such deadlines are

subject to extension in the Final Order for cause shown.  After the Challenge Deadline, with

respect to any party-in-interest other than the Committee, and after the Committee Challenge

Deadline, solely with respect to the Committee, any challenge to the Stipulations shall be forever

barred and enjoined.  For purposes of this Second Interim Order, to "challenge the Stipulations"

shall include, without limitation, any of the following: (i) any defenses, offsets, demands or

counterclaims relating to the Prepetition Notes Obligations, the Prepetition Notes Documents, or

to the validity, priority or perfection of the Prepetition Liens; (ii) any claim or cause of action by

or on behalf of a Debtor, Debtor-in-Possession, or the Debtors' estates against the Secured

Parties; (iii) any attempt to disallow, subordinate, avoid, or recharacterize any of the Prepetition

Notes Obligations or Prepetition Liens; (iv) any avoidance or similar action against the Secured

Parties pursuant to the Bankruptcy Code or other applicable non-bankruptcy law. The Trustee and the Ad Hoc Group may, in their sole and absolute discretion and as evidenced by each of their explicit written consent, agree to extend the Challenge Deadline or the Committee Challenge Deadline, as applicable, and any such agreed extension may be limited in duration, scope or otherwise.

(b)     To the extent any challenge referred to in paragraph 8(a) is timely asserted in an adversary proceeding or contested matter as set forth above, the Stipulations and the other provisions in paragraph 8(a) not subject to such challenge shall nonetheless remain binding and preclusive in these Chapter 11 Cases or in any successor case from and after the Challenge Deadline and the Committee Challenge Deadline, as applicable, except to the extent that such Stipulations or the other provisions of paragraph 8(a) were expressly challenged in such adversary proceeding or contested matter. Nothing in this Second Interim Order vests or confers on any person or entity standing or authority to pursue any cause of action belonging to the Debtors or their estates, including any claim against the Secured Parties, and each of the Secured Parties reserves all rights to challenge and object to such standing or authority.

9.     Restriction on Use of Prepetition Collateral Including Cash Collateral.

(a)     No portion of the Prepetition Collateral including, without limitation, the Cash Collateral (including amounts subject to the Carve-Out, other than the Investigation Fund), may be used to pay professional fees of any person or entity incurred in connection with or in relation to: (i) challenging the Prepetition Liens or Prepetition Notes Obligations; or (ii) initiating, prosecuting, commencing, asserting or maintaining any claim or cause of action (including any Claims and Defenses) against the Noteholders, the Trustee, or any of their affiliates, agents,

NYC:337590.2

attorneys, financial advisors, consultants, officers, directors and employees, including any discovery taken in anticipation thereof.

(b)      Furthermore, none of the Prepetition Collateral, including, without limitation, the Cash Collateral, shall be used to prevent, hinder or delay the Secured Parties from exercising any rights and remedies hereunder (including, without limitation, any enforcement or realization upon the Prepetition Collateral) once an Event of Default (defined below) has occurred and is continuing.

10.      <u>Waiver of Section 506(c) Claims</u>.  Subject to entry of the Final Order, as a further condition of the limited consent to the Debtors' use of the Prepetition Collateral, including, without limitation, the Cash Collateral, no costs or expenses of administration of these Chapter 11 Cases or any successor case (including, without limitation, any costs or expenses of preserving or disposing of the Prepetition Collateral), shall be charged against or recovered from or against the Secured Parties or Hydratek, Inc., the Adequate Protection Collateral, the Prepetition Collateral, or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise.  The Debtors and the Debtors' professionals waive any rights pursuant to section 506(c) of the Bankruptcy Code or otherwise (to the extent any such right exists) to assert any claims or charge any professional fees against or recover from or against any or all the Secured Parties or Hydratek, Inc., the Adequate Protection Collateral, the Prepetition Collateral and the Cash Collateral.

11.      <u>Rights Under Sections 363(k) and 1129</u>.  Subject to the entry of the Final Order, the full amount of the Prepetition Notes Obligations may be used to "credit bid" for the assets and property of the Debtors as provided for in section 363(k) of the Bankruptcy Code in accordance with the terms of the Prepetition Notes Documents without need for further Court

18

order authorizing the same and whether such sale is effectuated through section 363 and/or section 1129 of the Bankruptcy Code or otherwise because, among other things, the denial of such rights would result in the Prepetition Notes Obligations not receiving the indubitable equivalent of their claims.

12.     Proofs of Claim.   Notwithstanding anything to the contrary contained herein or in any prior or subsequent order of the Court, neither the Noteholders nor the Trustee shall be required to file any proof of claim with respect to the Prepetition Notes Obligations or any obligations hereunder, all of which shall be due and payable in accordance with the Prepetition Notes Documents or this Second Interim Order, as applicable, without the necessity of filing any such proof of claim, and the failure to file any such proof of claim shall not affect the validity or enforceability of any such Prepetition Notes Documents, this Second Interim Order, the Prepetition Notes Obligations or any other obligations hereunder, or prejudice or otherwise adversely affect the rights, remedies, powers or privileges of the Noteholders or the Trustee under the applicable Prepetition Notes Documents or this Second Interim Order; provided, further, that, for the avoidance of doubt, the filing of any proof of claim by the Noteholders or the Trustee shall not in any way prejudice or otherwise adversely affect such parties' rights, remedies, powers, or privileges under the Prepetition Notes Documents or this Second Interim Order.

13.     Disposition of Adequate Protection Collateral.   The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral or Adequate Protection Collateral outside the ordinary course of business without the prior written consent of the Trustee and the Ad Hoc Group (and no such consent shall be implied from any other action, any order of this Court, or inaction or acquiescence by the Trustee or the Ad Hoc

Group).  If requested to do so by the Ad Hoc Group, the Debtors shall use their best efforts (subject to applicable law, including, without limitation, the Debtors' fiduciary duties thereunder) to assist and cooperate in the sale of the Collateral, including by seeking approval of a sale of substantially all of their assets pursuant to section 363(b) of the Bankruptcy Code; provided, however, that all of the Trustee's rights with respect to any such sale of the Collateral shall be preserved.

14.     Rights and Remedies Upon Event of Default.

(a)     Events of Default.  Each of the following events shall constitute an event of default (collectively, the "Events of Default"):

> i.      the incurrence or payment by the Debtors of any expenses other than in accordance with the Approved Budget (subject to the Permitted Variance);
>
> ii.     if the Debtors' cash on hand is less than $6,000,000;
>
> iii.    except as provided herein, actual incurrence or payment by the Debtors of any fees, expenses or obligations in excess of the line-item amount budgeted for such fees, expenses or obligations in the Approved Budget (subject to the Permitted Variance);
>
> iv.     the entry of an order by the Court invalidating, disallowing, avoiding, recharacterizing, subordinating, offsetting or limiting in any respect, as applicable, either (A) the legality, enforceability, priority, validity and binding nature of the Prepetition Liens or Adequate Protection Replacement Liens securing the Prepetition Notes Obligations or (B) any of the Prepetition Notes Obligations or Adequate Protection Priority Claims, unless such order is a determination as to the relative priority of the Prepetition Liens and any Permitted Prior Lien;
>
> v.      the incurrence after the Petition Date of indebtedness that is: (A) secured by a security interest, mortgage, collateral interest or other lien on all or any portion of the Prepetition Collateral or the Adequate Protection Collateral senior to the liens of the Secured Parties; or (B) entitled to administrative priority status senior to the liens or claims of the Secured Parties (except, in the case of this clause (B) indebtedness incurred in the ordinary course of business with a priority that is junior to the claims granted to the Secured Parties), unless any such indebtedness is used to immediately refinance and pay the Prepetition Notes Obligations indefeasibly in full in cash;

vi.   the entry of a final order by the Court, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on or security interest in any Prepetition Collateral that has a material effect on the Debtors' business;

vii.   the reversal, vacatur, modification, supplement, extension or amendment (without the express prior written consent of the Secured Parties, in their sole discretion) of this Second Interim Order;

viii.   the entry by the Court of an order, or the filing by a Debtors of a motion which seeks entry of an order: (A) dismissing the Case; (B) converting the Case to a case under chapter 7 of the Bankruptcy Code; or (C) appointing a trustee or examiner with the expanded powers to operate the Debtors' business pursuant to section 1104 of the Bankruptcy Code (without Secured Parties' consent);

ix.   the Debtors' failure to remain current on any postpetition obligation, fees, or failure to pay any ordinary course or trade payables within 60 days of invoicing;

x.   failure to comply with the Reporting Requirements set forth in paragraph 4(e) of this Second Interim Order

xi.   failure to make any of the adequate protection provided by paragraph 4(d) of this Second Interim Order;

xii.   failure of the Debtors to obtain an order of the Court approving bidding procedures with such order in a form and substance acceptable to the Ad Hoc Group and the Trustee which, among other things, authorize the Debtor to market for sale, and solicit bids for the purchase of, substantially all of their assets (a "Bid Procedures Order") on or prior to June 12, 2015;

xiii.   any failure by the Debtors to comply with the terms of the Bid Procedures Order;

xiv.   the failure of the Debtors to conduct an auction (an "Auction") for the sale of substantially all of their assets on or prior to August 4, 2015;

xv.   the failure of the Debtors to obtain an order of the Court approving the sale by the Debtors of substantially all of their assets (the "Sale Order") on or prior to August 7, 2015;

xvi.   the filing by the Debtors of any motion with the Bankruptcy Court that seeks relief that is inconsistent with the relief contemplated by the Sale Order described herein without the consent of the Ad Hoc Group and the Trustee; or

NYC:337590.2

xvii.   any material breach by the Debtors of any of the obligations, representations, warranties or covenants set forth in this Second Interim Order, which material breach is not cured on or within three (3) business days after giving of written notice of such breach to the Debtor, if applicable, on or within the cure period, if any, provided for under this Second Interim Order.

(b)   If an Event of Default occurs, notice of which has been provided to the Debtors by the Secured Parties, the Debtors' ability to use Cash Collateral shall automatically terminate for all purposes at the end of the third (3rd) business day (the "Default Notice Period") following the giving of notice of such Event of Default (a "Termination Notice"), unless the Debtors have, prior to the expiration of the Default Notice Period, cured such Event of Default (the "Termination Date"); provided, however, that during the Default Notice Period, any Cash Collateral, including proceeds of Adequate Protection Collateral shall only be used in accordance with the Approved Budget; and the Debtors are only permitted to utilize Cash Collateral in conformance with the expense line items in the Approved Budget.

(c)   Unless otherwise ordered by the Court, the automatic stay provisions of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Secured Parties, upon the occurrence of a Termination Date, to take any or all of the following actions without further order or application to this Court: (i) terminate the Debtors' use of Cash Collateral; (ii) declare all Adequate Protection Priority Claims owed to the Secured Parties to be immediately due and payable; provided, however, that any Secured Party shall provide three (3) business days written notice (the "Waiting Period") (by facsimile, telecopy, electronic mail, or otherwise) to the U.S. Trustee, counsel to the Debtors and counsel to the Committee prior to exercising any enforcement rights or remedies in respect of the Prepetition Collateral and/or Adequate Protection Collateral (other than the rights described in clauses (a) or (b) above (to the extent they might be deemed remedies in respect of the Collateral and/or Adequate Protection

22

Collateral) and other than with respect to the Trustee freezing any deposit accounts or securities accounts maintained by either the Trustee or the Debtors). The rights and remedies of the Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that they may otherwise have. The Secured Parties will not object to any request by the Debtors for an expedited hearing during the Waiting Period provided the Debtors' actions and the relief requested is not prohibited under the terms of this Second Interim Order. In addition, upon the occurrence of the Termination Date, Secured Parties shall be entitled to request immediate relief from automatic stay upon five days' notice, in order to: (i) set off and apply immediately any and all amounts in accounts maintained by the Debtors with any Secured Parties against the Adequate Protection Priority Claims owed to the Secured Parties; or (ii) take any other actions or exercise any other rights or remedies permitted under this Second Interim Order or applicable law to effect the repayment and satisfaction of the Adequate Protection Priority Claims owed to the Secured Parties

15. <u>Preservation of Rights Granted Under this Second Interim Order</u>.

(a) <u>Dismissal</u>. If any order dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that the Adequate Protection shall continue in full force and effect and shall maintain the priorities as provided in this Second Interim Order until all of the Prepetition Notes Obligations have been indefeasibly paid in full in cash or are otherwise satisfied in full (and that the Adequate Protection shall, notwithstanding such dismissal, remain binding on all parties in interest).

(b) <u>Survival of Order</u>. The provisions of this Second Interim Order, any actions taken pursuant hereto, the Adequate Protection and all other rights, remedies, liens, priorities,

NYC:337590.2

privileges, protections and benefits granted to the Secured Parties shall survive, and shall not be modified, impaired or discharged by, the entry of any order confirming a plan of reorganization in the Chapter 11 Cases, converting the Chapter 11 Cases to a case under chapter 7, dismissing the Chapter 11 Cases, withdrawing the reference of the Chapter 11 Cases or any successor case(s) or providing for abstention from handling or retaining of jurisdiction of the Case in this Court, or by any other act or omission. The terms and provisions of this Second Interim Order, including the Adequate Protection and all other rights, remedies, liens, priorities, privileges, protections and benefits granted to the Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such Adequate Protection shall continue in these proceedings and in any successor case, and shall maintain its priority as provided by this Second Interim Order.

(c)     Binding Effect.   The provisions of this Second Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Secured Parties, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtors), whether in the Chapter 11 Cases, in any successor cases, or upon dismissal of any such Chapter 11 Cases or successor case, provided, however, that the Debtors' authorization to use of Cash Collateral hereunder, shall terminate upon the appointment of any chapter 7 or 11 trustee, examiner with expanded powers, or similar responsible person appointed for the estates of the Debtors.

NYC:337590.2

(d)     No Waiver.  The failure of the Secured Parties to seek relief or otherwise exercise its rights and remedies under this Second Interim Order, the Prepetition Notes Documents or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of the Secured Parties' rights hereunder, thereunder, or otherwise.  Except as expressly provided herein, nothing contained in this Second Interim Order (including, without limitation, the authorization of the use of any Prepetition Collateral, including, without limitation, Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Secured Parties, to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of the Debtors to contest such assertion).  The entry of this Second Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the Secured Parties under the Bankruptcy Code or non-bankruptcy law to: (i) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to the Debtors; or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the Secured Parties.

(e)     No Third Party Rights.  Except as explicitly provided for herein, this Second Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  In determining to permit the use of Prepetition Collateral, including, without limitation, the Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Second Interim Order, the Secured Parties shall not: (i) be deemed to be in control of the operations of the Debtors; or (ii) owe any fiduciary duty to the Debtors, its creditors, shareholders or estate.

25

NYC:337590.2

(f)     No Marshaling.   Subject to the entry of the Final Order, the Debtors shall not attempt to subject the Secured Parties to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Adequate Protection Collateral or the Prepetition Collateral, as applicable.

(g)     Amendments.   No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of the Debtors, the Trustee, the Ad Hoc Group, and, solely with respect to those provisions relating to Hydratek, Inc., Hydratek, Inc., and, except as provided herein, approved by this Court.  The Secured Parties may, without further notice, motion or application to, order of, or hearing before this Court, in their sole and absolute discretion, waive (including on a temporary basis), or forebear from exercising remedies with respect to (including on a temporary basis), any Event of Default.

(h)     Inconsistency.   In the event of any inconsistency between the terms and conditions of the Prepetition Notes Documents and the terms and conditions of this Second Interim Order, the provisions of this Second Interim Order shall govern and control.

(i)     Enforceability.   This Second Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable retroactive to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Second Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Second Interim Order.

NYC:337590.2

(j)     Headings.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Second Interim Order.

(k)     Automatic Stay.  The automatic stay imposed pursuant to Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of this Second Interim Order as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and to incur all liabilities and obligations to the Secured Parties under this Second Interim Order and (ii) otherwise to the extent necessary to implement and effectuate the provisions of this Second Interim Order.

16.     Final Hearing.  The Final Hearing shall take place on June 11, 2015 at 9:30 a.m. (Prevailing Mountain Time).  The Committee's deadline to object to the relief requested in the Motion shall be filed and served no later than 5:00 p.m. (Prevailing Mountain Time) on June 8, 2015 (the "Objection Deadline").  The failure by the Committee to timely file its objection by the Objection Deadline shall be a bar to the Committee's assertion, at the Final Hearing or thereafter, of any objection to the entry of an order granting the Debtors' use of Cash Collateral, the granting of Adequate Protection to the Secured Parties, and all other relief requested in the Motion.

17.     Service.  The Debtors shall serve notice of entry of this Second Interim Order and a copy of the Order on the Debtor's twenty largest creditors within five (5) days of entry of this Second Interim Order and file a certificate of service with the Court.

18.     Preservation of Prepetition Priorities.  Nothing in this Second Interim Order is intended to change or otherwise modify the prepetition priorities among secured creditors of the

Debtors and nothing in this Second Interim Order shall be deemed to have changed or modified such prepetition priorities, all of which are hereby expressly preserved.

19.   Hydratek, Inc. and USG Properties Bakken I, LLC.   To the extent that either Hydratek, Inc. or USG Properties Bakken I, LLC have an interest in the Cash Collateral senior to the Secured Parties, such interest shall be entitled to adequate protection in the same form and substance provided to the Secured Parties under paragraphs 4(a), 4(b), and 4(c) of this Second Interim Order; provided, however, that the priority of all adequate protection liens and claims among the Secured Parties, Hydratek, Inc., or USG Properties Bakken I, LLC shall be determined by the prepetition priorities among such parties, all of which are hereby expressly preserved.

20.   Retention of Jurisdiction.   The Court has and will retain jurisdiction to enforce this Second Interim Order according to its terms.

Dated:   May 29, 2015

BY THE COURT:

_Howard Tallman_

Howard R. Tallman, Judge
United States Bankruptcy Court

NYC:337590.2

**American Eagle Energy Corporation**
**Weekly Cash Forecast**
**Summary**

| Week Ended | 5/30/15 | 6/6/15 | 6/13/15 | 3-Week Totals |
|---|---|---|---|---|
| Beginning Cash [1] | $ 10,006,295 | $ 9,455,377 | $ 8,292,735 | $ 10,006,295 |
| **Receipts:** | | | | |
| Operated Revenue Receipts [2] | - | - | - | - |
| Non-Operated Revenue Receipts | - | - | - | - |
| Joint Interest Billing (JIB) Collections | 94,725 | 27,981 | 27,981 | 150,688 |
| Total Receipts | 94,725 | 27,981 | 27,981 | 150,688 |
| **Disbursements:** | | | | |
| Total Lease Operating Expenses (LOE) | (350,000) | (575,000) | (514,047) | (1,439,047) |
| Workovers & Other | (47,619) | (59,524) | (59,524) | (166,667) |
| Royalty/Non-Op Working Interest Payments | - | - | (1,355,937) | (1,355,937) |
| Royalty/Non-Op Payments – Suspense Wells | - | - | - | - |
| G&A – Payroll / Benefits / Payroll Taxes | (246,024) | - | - | (246,024) |
| G&A – Rent | - | (20,600) | - | (20,600) |
| G&A – Misc. Expenses | (2,000) | (50,500) | (12,000) | (64,500) |
| Total Operating Disbursements | (645,643) | (705,624) | (1,941,508) | (3,292,775) |
| Operating Cash Flow | (550,918) | (677,643) | (1,913,527) | (3,142,087) |
| Debtor Professional Fees – Legal | - | - | - | - |
| Debtor Professional Fees – Financial Advisor | - | - | - | - |
| Debtor Restructuring Expenses – Datacomm & Other | - | - | - | - |
| Noteholder Professional Fees – Legal | - | (450,000) | - | (450,000) |
| Noteholder Professional Fees – Financial Advisor | - | (35,000) | - | (35,000) |
| Unsecured Professional Fees – Legal [3] | - | - | - | - |
| Unsecured Professional Fees – Financial Advisor [3] | - | - | - | - |
| Bankruptcy Fees – Trustee & Other | - | - | - | - |
| Total Restructuring Disbursements | - | (485,000) | - | (485,000) |
| Net Cash Flow | (550,918) | (1,162,643) | (1,913,527) | (3,627,087) |
| Ending Cash [1] | $ 9,455,377 | $ 8,292,735 | $ 6,379,208 | $ 6,379,208 |
| | | | | |
| Ending Revenue Receivables | $ 7,531,622 | $ 7,797,044 | $ 8,682,467 | |
| Ending JIB & Misc. Receivables | $ 2,610,443 | $ 2,720,114 | $ 2,829,785 | |
| Ending Total Net Receivables | $ 10,122,065 | $ 10,517,158 | $ 10,512,251 | |
| Ending Balance | $ 19,577,442 | $ 18,809,893 | $ 17,201,459 | |

Footnotes:
[1] Beginning and ending cash balances have been reduced by approximately $394,712 for checks related to revenue payables that did not clear bank before Chapter 11 filing on 5/8/15.
[2] Operated Revenue Receipts assumes collections from Power Energy of March 2015 revenue holdback of $762,284 and April 2015 revenue holdback of $1,455,844 are outside of the forecast period.
[3] Estimated for Unsecured Creditor Committee legal and financial advisor fees are to be determined. The forecast does not include an allowance for the cost of a plan.

EXHIBIT
A

PENGAD 800-631-6989