UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| American Eagle Energy Corporation | ) | |
| | ) | Case No. 15-15073-HRT |
| In re: | ) | |
| | ) | |
| AMZG, Inc. | ) | Case No. 15-15074-HRT |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**APPLICATION TO RETAIN AND EMPLOY CANACCORD GENUITY, INC. UNDER 11 U.S.C. §§ 327(a) AND 328(a) AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

American Eagle Energy Corporation ("**American Eagle**") and AMZG, Inc. ("**AMZG**," and collectively the "**Debtors**"), debtors-in-possession herein, file this application ("**Application**") for entry of an order ("**Order**"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Canaccord Genuity, Inc. ("**Canaccord**") as investment banker and financial advisor effective *nunc pro tunc* to May 8, 2015 ("**Petition Date**"). In support of this Application, the Debtors submit the Declaration of Geoffrey A. Richards ("**Declaration**"), attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully state as follows:

**Jurisdiction and Venue**

The United States Bankruptcy Court for the District of Colorado (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The bases for the relief requested in this Application are sections 327(a) and 328 of title 11 of the United States Code ("**Bankruptcy Code**"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), and Local Bankruptcy Rule 2014-1.

### Relief Requested

By this Application, the Debtors seek entry of the Order authorizing the employment and retention of Canaccord as the Debtors' investment banker and financial advisor in accordance with the terms and conditions set forth in the engagement letter ("**Engagement Letter**") between the Debtors and Canaccord, a copy of which is attached hereto as **Exhibit 1** to the Order, and incorporated herein by reference.

### Background

On the Petition Date, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order for joint administration of these chapter 11 cases. Further information regarding the Debtors' business operations is set forth in the Declaration of Bradley M. Colby, President of American Eagle Energy Corporation in Support of First Day Pleadings and Expedited Entry of Orders [*Dkt. No. 14*].

### Retention of Canaccord

The Debtors seek to retain Canaccord as their investment banker and financial advisor because, among other things, Canaccord has extensive experience in, and an excellent reputation

for, providing high-quality investment banking and financial advisory services to debtors in bankruptcy reorganizations and other restructurings.

Canaccord is an independent and full service global investment banking firm offering investment banking, equity research, wealth management, institutional and private brokerage, and private capital solutions to individual and institutional clients. Canaccord employs over 2,200 individuals, and operates in twelve countries, including in cities such as Chicago, New York, Boston, San Francisco, London, Toronto, Vancouver, Paris, Sydney, Hong Kong, and Singapore. In its fiscal year ended March 31, 2013, Canaccord led or co-led over 111 transactions, raising over $3.5 billion for clients. During the same period, Canaccord advised on sixty-six M&A and advisory transactions with an aggregate value of over $18 billion.

The Debtors selected Canaccord because Canaccord's professionals have considerable expertise and experience in providing investment banking services to financially distressed companies and to creditors, purchasers, bondholders and other constituencies in chapter 11 as well as in out-of-court proceedings. Representative engagements that investment bankers at Canaccord have led in prior chapter 11 cases and restructurings include AbitibiBowater; American IronHorse Motorcycles, Inc.; BI-LO, LLC; Buccaneer Energy; Calpine Energy; Catalyst Paper; Compton Petroleum Corporation; Diamond Glass Companies, Inc.; Gateway Ethanol, LLC; Giordano's Enterprises, Inc.; Gulf Fleet Holdings, Inc.; HMX Acquisition Corp.; International Garden Products, Inc.; Jaguar Mining; KeyLime Cove Waterpark, Inc.; Loehmann's, Inc.; Max & Erma's, Inc.; National Envelope Corporation; OptiCanada, Inc.; Renew Energy, Inc.; Robbins Bros. Corporation; TimberWest; Waterworks, Inc.; and Yellow Media, Inc.

Canaccord's global energy team includes over 40 bankers in six countries, including the United States, Canada, England and Australia. The firm's energy bankers provide clients with corporate financial advisory as well as equity sales, trading, and research services. Since 2010, Canaccord's energy sector transactions involve more than $12 billion in aggregate value. Representative clients which investment bankers at Canaccord have advised in prior M&A engagements include: CAMAC Energy Inc.; Canacol Energy Ltd.; Crew Energy Inc.; Daylight Energy Ltd.; Emerald Oil, Inc.; Heritage Oil Ltd.; Novus Energy Inc.; OMV Group; Petroamerica Oil Corp.; Reliable Energy Ltd.; SAExploration Holdings, Inc.; and U.S. Oil Sands Inc.

As set forth in the Declaration, the Debtors engaged Canaccord prior to the Petition Date to provide investment banking services to the Debtors pursuant to the Engagement Letter dated April 10, 2015, which is attached hereto as **Exhibit C.** Canaccord and the Debtors have also entered into an indemnity agreement ("**Indemnity Agreement**"), a true and correct copy of which is attached to the Engagement Letter as **Exhibit A**.

As a result of rendering prepetition services to the Debtors, Canaccord is intimately familiar with the Debtors' corporate and capital structure, management, operations, and various other aspects of their business. Canaccord has a well-developed knowledge of the Debtors' financial history and business operations and is well-suited to provide the Debtors with the services contemplated by the Engagement Letter.

## Services To Be Provided

Subject to entry of the Order and consistent with the terms of the Engagement Letter, Canaccord will serve as the exclusive financial advisor and investment banker to the Debtors in connection with any New Capital Raise, M&A Transaction, and/or Recapitalization Transaction.

Further, Canaccord will perform the following services as necessary and to the extent feasible (collectively, the "**Services**"):[1]

    (a) Review and analyze the Debtors' business and financial projections;

    (b) Evaluate the Debtors' strategic and financial alternatives;

    (c) Assist the Debtors to negotiate, refinance, restructure, defer or amend the maturity of, principal amount of, or interest rate or yield of, exchange, or otherwise pay off some or all of the Debtors' existing indebtedness;

    (d) Assist the Debtors in evaluating, structuring, negotiating and implementing potential Transactions;

    (e) Assist the Debtors in preparing descriptive material to be provided to potential parties that might participate in potential Transactions;

    (f) Develop, update and review with the Debtors on an ongoing basis a list of parties that might participate in potential Transactions;

    (g) Contact potential parties to potential Transactions;

    (h) Provide summaries to the Debtors of communications with potential parties to potential Transactions;

    (i) Assist the Debtors and its counsel with evaluating potential term sheets, indications of interest, letters of intent and other Transaction agreements;

    (j) Evaluate, structure and negotiate the terms and conditions of any proposed Transaction, whether in connection with a confirmed chapter 11 plan ("**Plan**") or otherwise;

    (k) Together with the Debtors and its counsel, prepare for and participate in meetings with the Debtors' existing lenders, creditor groups, official constituencies and other interested parties, as necessary;

    (l) If requested by the Debtors and its counsel, participate in hearings before the Court and provide relevant testimony

---

[1] The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only. In the event of any inconsistency, the terms of the Engagement Letter shall control. Capitalized terms used herein but not otherwise defined have the meanings ascribed to such terms in the Engagement Letter.

        with respect to the matters described herein and arising in connection with any Transaction or any proposed Plan;

(m) Assist the Debtors and its counsel in negotiating agreements and definitive contracts for Transactions;

(n) Assist in the development of financial data (including weekly cash flow forecasts, budget-to-actual comparisons, analysis of accounts receivable, and analysis of accounts payable), and participate in presentations to the Debtors' Board of Directors, representatives, creditors, committees, and other parties, providing such on-site presence as the Debtors shall reasonably request;

(o) Provide the Debtors with other advisory services in connection with a Transaction (or combination of Transactions) as the Debtors and Canaccord may mutually agree upon; and

(p) Perform other such services as Canaccord and the Debtors shall mutually agree in a separate writing, subject to Court approval.

The Services are necessary to enable Debtors to maximize the value of Debtors' estates.

## Professional Compensation

Subject to the Court's approval and as set forth in the Engagement Letter, the Debtors and Canaccord have agreed to the following compensation and expense structure ("**Fee Expense Structure**") in consideration for the services to be rendered by Canaccord in these Chapter 11 cases:[2]

(a) <u>Monthly Retainer Fees</u>. A monthly fee in the amount of $75,000 due, earned and payable in advance in full, on the date hereof and the first business day of every month thereafter ("**Monthly Retainer Fees**"); provided however, to the extent that the Services provided to Debtors in Section 1 are reduced, the Debtors and Canaccord shall

---

[2] This summary is presented for convenience purposes only and is not an exhaustive reflection of the fee and expense terms set forth in the Engagement Letter, which are controlling in all respects. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letter.

6

work together to amend the Monthly Retainer Fee as appropriate for such anticipated changes.

(b) <u>New Capital Fee</u>. A new capital fee ("**New Capital Fee**"), upon the consummation of a New Capital Transaction, calculated by multiplying the applicable fee percentage by the total gross proceeds raised or committed pursuant to an executed final definitive agreement as set forth below:

| Funds Raised | Fee % |
|---|---|
| Debt | 3.00% |
| Equity or Equity Equivalents | 6.00% |

(c) <u>Recapitalization Fee</u>. A recapitalization fee ("**Recapitalization Fee**") equal to $1,750,000 upon the consummation of any Recapitalization Transaction.

(d) <u>M&A Transaction Fee</u>. Upon the consummation of a M&A Transaction, a fee ("**M&A Fee**") equal to 2.0% of Aggregate Consideration (defined below), subject to a $1,500,000 minimum fee.

(e) <u>Multiple Transactions</u>. Canaccord shall be paid all applicable fees in connection with a Transaction (e.g., if a Transaction constitutes both a Recapitalization Transaction and a New Capital Raise, then Canaccord shall be paid both the Recapitalization Fee and the New Capital Fee), but such fees shall be without duplication and calculated ratably with respect to such proceeds raised or Aggregate Consideration, as the case may be, and further provided, Canaccord shall be entitled to the greater of such applicable minimum fees.

(f) <u>Aggregate Consideration</u>. For purposes hereof, the term "**Aggregate Consideration**" means cumulative value of the M&A Transaction, representing the total value of the Debtors implied by the sum of (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid or payable in connection with the M&A Transaction, including amounts paid or payable in respect of, if any, convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money of the Debtors as set forth on the most recent balance sheets plus the excess of the projected liability of any pension plan over its assets for the last completed reporting period prior to close, or, in case of the sale of assets, all liabilities assumed by the third party. If the Aggregate Consideration is subject to increase

7

        by contingent payments related to future events, the portion of Canaccord's fee relating thereto shall be calculated by Canaccord in good faith subject to the Debtors' reasonable approval, with the full amount paid to Canaccord upon closing.

    (g) <u>Calculation of Aggregate Consideration</u>.  For purposes of calculating Aggregate Consideration: (i) in an M&A Transaction involving the sale or transfer, directly or indirectly, of 50% or more of the outstanding common stock or other equity interest in, or assets of, the Debtors, Aggregate Consideration shall be calculated as if 100% of the outstanding common stock or other equity interest in, or assets of, the Debtors were sold or transferred for the same amount paid (and otherwise on the same terms) in such M&A Transaction; (ii) the value of any security (as that term is defined in the Securities Act of 1933, as amended) issuable in connection with a M&A Transaction will be determined, if a publicly-traded security, on the basis of the volume-weighted average of the closing prices for the 20 trading days prior to the closing, or, if the security is not freely traded (or having no established public market) on the basis of the fair market value of such security at closing as determined in good faith by Canaccord and the Debtors; and (iii) the value of any property transferred in connection with a Transaction will be determined on the basis of the fair market value of such property at closing as determined in good faith by Canaccord and the Debtors.

The Fee and Expense Structure described above is comparable to compensation generally charged by investment banking firms of similar stature to Canaccord and for comparable engagements, both in and out of bankruptcy proceedings.  The Fee and Expense Structure is also consistent with Canaccord's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined.   Canaccord and the Debtors also believe that the Fee and Expense Structure is reasonable and at favorable market rates. Canaccord's industry and restructuring experience, its capital markets knowledge, financing skills, and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Canaccord's engagement, were important factors in determining the Fee and Expense Structure.  The ultimate benefit to the Debtors of Canaccord's services could

not be measured merely by reference to the number of hours to be expended by Canaccord's professionals in the performance of such services. Moreover, the Fee and Expense Structure takes into consideration Canaccord's anticipation that it will need to provide a substantial commitment of professional time and effort in order to perform its duties under the Engagement Letter, and in light of the fact that such commitment may foreclose other opportunities for Canaccord. Further, the actual time and commitment required of Canaccord and its professionals to render services to the Debtors may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

Because of Canaccord's expertise, commitment of resources to this engagement to the exclusion of other possible employment, and the time that Canaccord has devoted and will continue to devote to this engagement, Debtors request that the Court approve the Fee and Expense Structure for Canaccord pursuant to section 328(a) of the Bankruptcy Code and that the Court evaluate the final compensation and reimbursement of expenses in these Chapter 11 cases for Canaccord under the standards of section 328(a) of the Bankruptcy Code, rather than under Section 330 of the Bankruptcy Code.

## Compliance with Bankruptcy Code

As set forth in the Engagement Letter, Canaccord shall file with the Court a final fee application for allowance of its compensation and reimbursement of expenses with respect to services rendered in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the guidelines for compensation and reimbursement of expenses established by the U.S. Trustee ("**UST Guidelines**"). However, the Debtors are advised by Canaccord that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys or to keep time records on a

9

"project category" basis. To the extent the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or the UST Guidelines would require Canaccord to submit more detailed time records for its professionals, the Debtors request that Canaccord be permitted to present reasonably detailed descriptions of those services provided on behalf of the Debtors and the individuals who provided professional services on behalf of the Debtors.

Canaccord has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than other principals and employees of Canaccord, in accordance with section 504 of the Bankruptcy Code.

## Payments to Canaccord Prior to the Petition Date

During the 90 days immediately preceding the Petition Date, Canaccord received the following payments in connection with Canaccord's engagement under the Engagement Letter: Canaccord received fee payments totaling $200,000 and expense reimbursement payments totaling $19,284.75. Other than as set forth herein, Canaccord did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date. As of the Petition Date, the Debtors did not owe Canaccord for any fees or expenses incurred prior to the Petition Date.

## Indemnification Provisions

As part of the overall compensation payable to Canaccord under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification and contribution provisions as set forth in the Indemnity Agreement ("**Indemnification Provisions**"). The Indemnification Provisions provide, among other things, that the Debtors will indemnify and hold harmless Canaccord and its affiliates, and each of their respective members, principals, partners, officers, directors, employees, agents, counsel, controlling parties, and any successors, assigns, heirs, and personal representatives of the foregoing (each, an "**Indemnified Party**" and

collectively, "**Indemnified Parties**") from any and all losses, claims, damages, obligations, penalties, judgments, awards, costs, disbursements, and liabilities and expenses (including, without limitation, all reasonable fees and expenses of the Indemnified Parties' counsel and all of the Indemnified Parties' reasonable travel and other reasonable out-of-pocket expenses incurred) arising out of or in connection with the Engagement Letter or any Potential Transaction contemplated under the Engagement Letter, provided, however, that the Debtors will have no such indemnification obligations in the event such obligations are judicially determined to have resulted primarily and directly from the gross negligence or bad faith of Canaccord.

The Indemnification Provisions are standard indemnification terms, both in chapter 11 cases and outside of chapter 11 cases, and reflect the qualifications and limits on such terms that are customary for Canaccord and other similar investment bankers as approved in this and other jurisdictions. The Indemnity Agreement was fully negotiated between the Debtors and Canaccord at arm's length and the Debtors respectfully submit that the Indemnity Agreement is reasonable and in the best interest of the Debtors, their estates, and creditors. Accordingly, as part of this Application, the Debtors request that this Court approve this Indemnity Agreement. Canaccord has agreed that it shall not seek such indemnification without seeking this Court's approval of reasonableness.

### Canaccord's Disinterestedness

To the best of the Debtors' knowledge, and as disclosed herein and in the Declaration: (i) Canaccord is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent any interest adverse to the Debtors' estates; and (ii) Canaccord has no connection to the Debtors, their creditors, or related parties, except as may be disclosed in the Declaration.

Canaccord shall review its files against any updated list of Potential Parties in Interest (as defined in the Declaration) received from the Debtors from time to time during the pendency of these Chapter 11 cases pursuant to the procedures described in the Declaration. If any new relevant facts or relationships are discovered or arise in such review, Canaccord shall use reasonable efforts to identify such further developments and shall file promptly a supplemental declaration where appropriate.

## Basis for Relief

Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under the [Bankruptcy Code].

Section 328(a) of the Bankruptcy Code further provides, in relevant part, that:

> The [debtor] … with the court's approval, may employ or authorize the employment of a professional person under section 327 … of this title… on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States

>Trustee, or any person employed in the office of the United States Trustee.

The resources, capabilities, and experience of Canaccord in advising the Debtors are crucial to the Debtors during these Chapter 11 cases. Canaccord and its senior professionals have extensive experience and an excellent reputation for providing high quality investment banking and restructuring services to debtors and creditors in complex chapter 11 cases and out-of-court restructurings. An experienced investment banker such as Canaccord fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. Canaccord will continue to concentrate its efforts on, among other things, a New Capital Raise, an M&A Transaction and/or Recapitalization Transaction.

In the event the Application is not granted, the Debtors and their estates would be significantly harmed. The Debtors would be forced to engage a new investment banker and financial advisor lacking the same understanding of the Debtors' business and restructuring initiatives. Engaging a new investment banker and financial advisor would also require the Debtors to expend additional time and resources at a critical stage in these Chapter 11 cases. For these reasons, the Debtors believe that the retention of Canaccord is in the best interest of the estates and that the Application should be granted.

Based on the foregoing, the Debtors submit that for all the reasons stated above and in the Declaration, the retention of Canaccord as investment banker and financial advisor is warranted and satisfies the requirements of sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a). Further, as stated in the Declaration, Canaccord is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors'

estates and has no connection to the Debtors, their creditors, or related parties except as may be disclosed in the Declaration.

The Debtors believe that the Fee and Expense Structure is reasonable and should be approved by the Court under section 328(a) of the Bankruptcy Code in light of: (i) industry practice; (ii) market rates charged for comparable services both in and out of the chapter 11 context; (iii) Canaccord's substantial experience with respect to investment banking and restructuring services; and (iv) the complexity and scope of work anticipated to be performed by Canaccord in connection with these Chapter 11 cases.

Bankruptcy courts routinely grant relief similar to that requested herein. *See, e.g., In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. July 26, 2012) [Dkt. No. 920]; *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. March 2, 2012) [Dkt. No. 1557]; *In re Borders Group, Inc.*, Case No. 11-10614 (MG) (Bankr. S.D.N.Y. March 16, 2011) [Dkt. No. 393]; *In re The Great Atlantic & Pacific Tea Debtors, Inc.*, Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 12, 2011) [Dkt. No. 487]; *In re Citadel Broadcasting Corporation*, Case No. 09-17442 (BRL) (Bankr. S.D.N.Y. Apr. 12, 2010) [Dkt. No. 271]; *In re Gen. Growth Props., Inc.*, Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. May 26, 2009) [Dkt. No. 602]; *In re Lehman Brothers Holdings, Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008) [Dkt. No. 2275]; *In re VPR Operating, LLC, et al.*, Case No. 13-10599 (TMD) (Bankr. W.D. Tx., June 10, 2013) [Dkt. No. 240]; *In re Johnson Dairy*, Case No. 09-10201 (SBB) (Bankr. D. Colo. 2009) [Dkt. No. 385]. The Debtors submit that the present circumstances warrant similar relief in these Chapter 11 cases.

The terms of the Indemnity Agreement are standard engagement provisions, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on such terms

that are customary for Canaccord and other similar investment bankers as approved in other jurisdictions. *See United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217, 234 (3d Cir. 2003) (finding that indemnification agreement between debtor and financial advisor was reasonable under section 328 of the Bankruptcy Code). Indeed, bankruptcy courts in similarly sized cases routinely grant similar relief. See, e.g., *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. July 26, 2012) [Dkt. No. 920]; *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. March 2, 2012) [Dkt. No. 1557]; *In re Borders Group, Inc.*, Case No. 11-10614 (MG) (Bankr. S.D.N.Y. March 16, 2011) [Dkt. No. 393]; *In re The Great Atlantic & Pacific Tea Debtors, Inc.*, Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 12, 2011) [Dkt. No. 487]; *In re Citadel Broadcasting Corporation*, Case No. 09-17442 (BRL) (Bankr. S.D.N.Y. Apr. 12, 2010) [Dkt. No. 271]; *In re Gen, Growth Props., Inc.*, Case No. 09-11977 (ALG) (Bankr. S.D.N.Y, May 26, 2009) [Dkt. No. 602]; *In re Lehman Brothers Holdings, Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008) [Dkt. No. 2275]; *In re VPR Operating, LLC, et al.*, Case No. 13-10599 (TMD) (Bankr. W.D. Tx., June 10, 2013) [Dkt. No. 240]; *In re Johnson Dairy*, Case No. 09-10201 (SBB) (Bankr. D. Colo. 2009) [Dkt. No. 385] (qualified indemnity agreement).

## Notice

Notice of this Motion has been provided in accordance with Local Bankruptcy Rule 9013-1.

## No Prior Request

The Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, Debtors respectfully request for the reasons set forth herein that the Court enter an order, substantially in the form attached hereto as **Exhibit A,** authorizing and approving the retention and employment by the Debtors of Canaccord as their investment banker and financial advisor, effective as of the Petition Date, and granting such other and further relief as this Court deems just and proper.

Dated this 29th day of May, 2015.

    BAKER & HOSTETLER LLP

    *s/ Lars Fuller*
    Elizabeth Green, Fla. Bar No. 0600547
    Jorian L. Rose, NY Bar No. JR-5518
    Jimmy D. Parrish, Fla. Bar No. 0526401
    Lars Fuller, Colo. Bar No. 26051

    **BAKER & HOSTETLER LLP**
    200 S. Orange Ave.
    SunTrust Center, Suite 2300
    P.O. Box 112 (32802-0112)
    Orlando, Florida 32801-3432
    Phone: 407-649-4000
    Fax: 407-841-0168
    Email: egreen@bakerlaw.com
    Email: jparrish@bakerlaw.com

    45 Rockefeller Plaza, 14th Floor
    New York, New York 101111
    Phone: 212-589-4200
    Fax: 212-589-4201
    Email: jrose@bakerlaw.com

    1801 California Street, Suite 4400
    Denver, Colorado 80202
    Phone: 303-764-4114
    Fax: 303-861-7805
    Email: lfuller@bakerlaw.com

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that on May 29, 2015, I served a true copy of the foregoing via electronic transmission to all CM/ECF participants requesting electronic notice and/or via U.S. Postage Prepaid Mail to the following: **American Eagle Energy Corporation**, 2549 W. Main Street, Suite 202, Littleton, CO 80120 (Debtor); **AMZG, Inc.,** 2549 W. Main Street, Suite 202, Littleton, CO 80120 (Debtor); **Paul N. Silverstein**, Andrews Kurth, LLP, 450 Lexington Avenue, NY, NY 10017; **James T. Markus**, Markus Williams Young & Zimmerman LLP, 1700 Lincoln Street, Suite 4550, Denver, CO 80203; **Barry L. Wilkie, Esq.**, Jones & Keller, P.C., 1999 Broadway, Suite 3150, Denver, CO 80202 *(Counsel to the Official Committee of Unsecured Creditors)*; **Jeffrey N. Pomerantz, Esq., Ira D. Kharasch, Esq.** Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067-4100 *(Counsel to the Official Committee of Unsecured Creditors)*; the Twenty Largest Unsecured Creditors set forth at Docket No. 68; all parties in interest who have entered an appearance in these proceedings; all parties in interest who have filed a request for notices in these proceedings; and the **Office of the United States Trustee**, Byron G. Rogers Federal Building, 1961 Stout St., Suite 12-200, Denver, Colorado 80294.

                                                   *s/ Lars Fuller*
                                                   Lars Fuller, Esq.