# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| American Eagle Energy Corporation | ) | |
| | ) | Case No.  15-15073-HRT |
| In re: | ) | |
| | ) | |
| AMZG, Inc. | ) | Case No. 15-15074-HRT |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

## DECLARATION OF GEOFFREY A. RICHARDS
## IN SUPPORT OF THE APPLICATION TO RETAIN AND EMPLOY
## CANACCORD GENUITY INC.  UNDER 11 U.S.C. §§ 327(a) AND 328(a)
## AS INVESTMENT BANKER AND FINANCIAL ADVISOR
## FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

---

I, Geoffrey A.  Richards, being duly sworn according to law, depose and state that:

1.        I am head of the U.S. Debt Finance & Restructuring Group at Canaccord Genuity Inc.  ("**Canaccord Genuity**"), an investment banking firm that maintains offices at 350 Madison Avenue, New York, New York 10017, and am duly authorized to make this declaration ("**Declaration**") on behalf of Canaccord Genuity.  Unless otherwise indicated herein, the facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto.  To the extent that any information disclosed herein requires subsequent amendment or modification upon Canaccord Genuity's completion of further analysis or as additional creditor information becomes available to it, one or more supplemental declarations will be submitted to the court reflecting the same.

2.        This Declaration is submitted in support of the Application of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order

1

authorizing the employment and retention of Canaccord Genuity as investment banker and financial advisor for the Debtors ("**Application**").[1] This Declaration is also submitted as the statement required pursuant to Sections 327(a) and 328(a), 11 U.S.C. ("**Bankruptcy Code**"), and Federal Rule of Bankruptcy Procedure ("**Bankruptcy Rule**") 2014(a).

### Canaccord Genuity's Qualifications

3.       Canaccord Genuity is a global investment banking firm offering investment banking, asset management, equity research, institutional and private brokerage, and private capital solutions to individual and institutional clients.  Canaccord Genuity employs over 2,200 individuals and has office locations in 12 countries, including cities such as New York, Boston, San Francisco, London, Toronto, Vancouver, Paris, Sydney, Hong Kong, and Singapore.  In its fiscal year ended March 31, 2013, Canaccord Genuity led or co-led over 111 transactions, raising over $3.5 billion for clients.  During the same period, Canaccord Genuity advised on sixty-six M&A and advisory transactions with an aggregate value of over $18 billion.

4.       Canaccord Genuity is uniquely qualified to advise the Debtors in these Chapter 11 cases.  Canaccord Genuity professionals have extensive experience in matters involving complex financial restructurings and expertise in mergers and acquisitions, capital raisings, restructurings, and other strategic advisory services.  Additionally, Canaccord Genuity and/or its bankers have been involved as investment bankers and/or financial advisors to a diverse group of debtors, creditors, purchasers, bondholders, and other constituencies in chapter 11 as well as in out-of-court proceedings.   Representative engagements that investment bankers at Canaccord Genuity have led in prior chapter 11 cases and restructurings include AbitibiBowater, Inc.; American IronHorse Motorcycles, Inc.; BI-LO, LLC; Buccaneer Energy; Calpine Energy; Catalyst Paper;

---

[1] Capitalized terms used herein and not defined otherwise shall have the meanings ascribed to them in the Application.

Compton Petroleum Corporation; Diamond Glass Companies, Inc.; Gateway Ethanol, LLC; Giordano's Enterprises, Inc.; Gulf Fleet Holdings, Inc.; HMX Acquisition Corp.; International Garden Products, Inc.; Jaguar Mining; KeyLime Cove Waterpark, Inc.; Loehmann's, Inc.; Max & Erma's, Inc.; National Envelope Corporation; OptiCanada, Inc.; Renew Energy, Inc.; Robbins Bros. Corporation; TimberWest; Waterworks, Inc.; and Yellow Media, Inc.

5.      Canaccord Genuity's global energy team includes over 40 bankers in six countries, including the United States, Canada, England, and Australia.  The firm's energy bankers provide clients with corporate financial advisory as well as equity sales, trading, and research services.  Since 2010, Canaccord Genuity's energy sector transactions involve more than $12 billion in aggregate value.  Representative clients which investment bankers at Canaccord have advised in prior M&A engagements include: CAMAC Energy Inc.; Canacol Energy Ltd.; Crew Energy Inc.; Daylight Energy Ltd.; Emerald Oil, Inc.; Heritage Oil Ltd; Novus Energy Inc.; OMV Group; Petroamerica Oil Corp.; Reliable Energy Ltd.; SAExploration Holdings, Inc.; and U.S. Oil Sands Inc.

6.      I will lead all of the day-to-day aspects of the engagement.  I have extensive complex transaction experience in a comprehensive range of restructuring and distressed mergers and acquisition engagements, both inside and outside of chapter 11.  I have advised public and private companies, private equity sponsors, hedge funds, purchasers of distressed assets and businesses, key secured and unsecured creditors, debtor-in-possession financing lenders, and creditors' committees.  I was previously Head of Special Situations & Restructuring at William Blair & Company LLC and a partner in the Kirkland & Ellis LLP restructuring practice.  Since 2001, I have taught corporate restructuring as an adjunct professor at Northwestern University School of Law.

3

7.      Canaccord Genuity was engaged prior to the Petition Date to provide investment banking services to the Debtors pursuant to a certain engagement letter, dated as of April 10, 2015, a true and correct copy of which is attached to the Application as Exhibit C ("**Engagement Letter**").[2]  Canaccord Genuity and the Debtors have also entered into an indemnity agreement ("**Indemnity Agreement**"), a true and correct copy of which is attached to the Engagement Letter as Annex A.

8.      Canaccord Genuity was first retained to, among other things, raise new capital in February, 2015.  As a result of rendering prepetition services to the Debtors since February of this year, Canaccord Genuity is intimately familiar with the Debtors' corporate and capital structure, management, operations, and various other aspects of their business.  Canaccord Genuity has a well-developed knowledge of the Debtors' financial history and business operations and is well-suited to provide the Debtors with the services contemplated by the Engagement Letter.  I believe that Canaccord Genuity's services will assist the Debtors in a successful outcome of these Chapter 11 cases.

## Services to Be Rendered

9.      Canaccord Genuity has agreed to advise the Debtors in connection with (a) a New Capital Raise; (b) an M&A Transaction; and/or (c) a Recapitalization Transaction.  Each of the New Capital Raise, M&A Transaction and/or Recapitalization Transaction is referred to as a "**Possible Transaction**," they are collectively referred to as "**Possible Transactions**," and they are described as follows:

       a.      As used herein, "**New Capital Raise**" shall mean any new financing for any portion of the Debtors, whether in the form of secured, unsecured, subordinated or senior debt, equity or equity equivalents.

---

[2] Capitalized terms not otherwise defined in this section shall have the meaning ascribed to them in the Engagement Letter.

b.   As used herein, "**Recapitalization Transaction**" shall mean any one or more of the following: (i) any transaction or series of transactions that effects material amendments to or other material changes in any of the Debtors' outstanding non-trade indebtedness or credit facilities, whether or not currently funded, and other liabilities including any exchange or repurchase of the Debtors' indebtedness; (ii) any restructuring, reorganization, confirmation of a Plan in the event that the Debtors files for or consents to relief under chapter 11 of the Bankruptcy Code, exchange offer, consent solicitation, tender offer, refinancing or similar transaction accepted by the Debtors; or (iii) any transaction similar to any of the foregoing, including a business combination in which the Debtors' creditors are materially involved in the transaction.

c.   As used herein, "**M&A Transaction**" shall mean any transaction or series of transactions involving (a) an acquisition, merger, consolidation or other transaction with another party through which assets constituting or accounting for not less than a majority of the business or assets of the Debtors are, directly or indirectly, combined with or transferred to another party; (b) the acquisition, directly or indirectly, by a buyer or buyers of equity interests or options, or any combination thereof constituting a majority or controlling portion of the stock of the Debtors or possessing a majority or controlling portion of the voting power of the Debtors; (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of a majority or controlling portion of the securities or other interests of the Debtors (through tender offer, merger, sale, exchange or otherwise); (d) the formation of a joint venture or partnership with the Debtors or direct investment in the Debtors for the purposes of affecting a transfer of a majority or controlling interest in the Debtors to a third party; or (e) any combination of the foregoing.

10.   Canaccord Genuity will also provide such investment banking services as Canaccord Genuity and the Debtors deem appropriate in connection with a Possible Transaction during the course of these Chapter 11 cases, including, but not limited to, the following:

a.   Review and analyze the Debtors' business and financial projections;

b.   Evaluate the Debtors' strategic and financial alternatives;

c.   Assist the Debtors in negotiating, refinancing, restructuring, deferring, or amending the maturity of, principal amount of, or interest rate or yield of, exchange, or otherwise pay off some or all of the Debtors' existing indebtedness;

d.   Assist the Debtors in evaluating, structuring, negotiating, and implementing potential Transactions;

5

e.   Assist the Debtors in preparing descriptive material to be provided to potential parties that might participate in potential Transactions;

f.   Develop, update and review with the Debtors on an ongoing basis a list of parties that might participate in potential Transactions;

g.   Contact potential parties to potential Transactions;

h.   Provide summaries to the Debtors of communications with potential parties to potential Transactions;

i.   Assist the Debtors and their counsel with evaluating potential term sheets, indications of interest, letters of intent and other Transaction agreements;

j.   Evaluate, structure and negotiate the terms and conditions of any proposed Transaction, whether in connection with a confirmed chapter 11 plan ("**Plan**") or otherwise;

k.   Together with the Debtors and their counsel, prepare for and participate in meetings with the Debtors' existing lenders, creditor groups, official constituencies and other interested parties, as necessary;

l.   If requested by the Debtors and their counsel, participate in hearings before the Bankruptcy Court in which such cases are commenced ("**Bankruptcy Court**") and provide relevant testimony with respect to the matters described herein and arising in connection with any Transaction or any proposed plan of reorganization;

m.   Assist the Debtors and their counsel in negotiating agreements and definitive contracts for Transactions;

n.   Assist in the development of financial data (including weekly cash flow forecasts, budget to actual comparisons, analysis of accounts receivable, and analysis of accounts payable), assist in presentations to the Debtors' Board of Directors, representatives, creditors, committees, and other parties in interest, and provide such on-site presence at the Debtors as the Debtors shall reasonably request;

o.   Provide the Debtors with other advisory services in connection with a Transaction (or combination of Transactions) as the Debtors and Canaccord Genuity may mutually agree upon; and

p.   Perform other such services as Canaccord Genuity and the Debtors shall mutually agree in a separate writing, subject to Court approval.

## **Professional Compensation**

11.     Subject to this Court's approval and as set forth in the Engagement Letter, the
Debtors and Canaccord Genuity have agreed to the following compensation and expense
structure ("**Fee and Expense Structure**") in consideration for the services to be rendered by
Canaccord Genuity in these Chapter 11 cases:

    a.    <u>Monthly Retainer Fees</u>.  A monthly fee in the amount of $75,000 due,
earned and payable in advance in full, on the date hereof and the first
business day of every month thereafter ("**Monthly Retainer Fees**").

    b.    <u>New Capital Fee</u>.  A new capital fee ("**New Capital Fee**"), upon the
consummation of a New Capital Transaction, calculated by multiplying
the applicable fee percentage by the total gross proceeds raised or
committed pursuant to an executed final definitive agreement as set forth
below:

| Funds Raised | Fee % |
|---|---|
| Debt | 3.00% |
| Equity or Equity Equivalents | 6.00% |

    c.    <u>Recapitalization Fee</u>.  A recapitalization fee ("**Recapitalization Fee**")
equal to $1,750,000 upon the consummation of any Recapitalization
Transaction.

    d.    <u>M&A Transaction Fee</u>.  Upon the consummation of a M&A Transaction, a
fee ("**M&A Fee**") equal to 2.0% of Aggregate Consideration (defined
below), subject to a $1,500,000 minimum fee.

    e.    <u>Multiple Transactions</u>.  Canaccord Genuity shall be paid all applicable
fees in connection with a single Transaction (e.g., if a Transaction
constitutes both a Recapitalization Transaction and a New Capital Raise,
then Canaccord Genuity shall be paid both the Recapitalization Fee and
the New Capital Fee), but such fees shall be without duplication and
calculated ratably with respect to such proceeds raised or Aggregate
Consideration, as the case may be, and further provided, Canaccord
Genuity shall be entitled to the greater of such applicable minimum fees.

    f.    <u>Aggregate Consideration</u>.  For purposes hereof, the term "**Aggregate
Consideration**" means cumulative value of the M&A Transaction,
representing the total value of the Debtors implied by the sum of (x) the
total amount of cash and the fair market value (on the date of payment) of
all of the property paid or payable in connection with the M&A
Transaction, including amounts paid or payable in respect of, if any,

7

convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y) the principal amount of all indebtedness for borrowed money of the Debtors as set forth on the most recent balance sheet plus the excess of the projected liability of any pension plan over their assets for the last completed reporting period prior to close, or, in case of the sale of assets, all liabilities assumed by the third party. If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of Canaccord Genuity's fee relating thereto shall be calculated by Canaccord Genuity in good faith subject to the Debtors' reasonable approval, with the full amount paid to Canaccord Genuity upon closing.

g.      <u>Calculation of Aggregate Consideration</u>.  For purposes of calculating Aggregate Consideration: (i) in an M&A Transaction involving the sale or transfer, directly or indirectly, of 50% or more of the outstanding common stock or other equity interest in, or assets of, the Debtors, Aggregate Consideration shall be calculated as if 100% of the outstanding common stock or other equity interest in, or assets of, the Debtors were sold or transferred for the same amount paid (and otherwise on the same terms) in such M&A Transaction; (ii) the value of any security (as that term is defined in the Securities Act of 1933, as amended) issuable in connection with a M&A Transaction will be determined, if a publicly-traded security, on the basis of the volume-weighted average of the closing prices for the 20 trading days prior to the closing, or, if the security is not freely traded (or having no established public market) on the basis of the fair market value of such security at closing as determined in good faith by Canaccord Genuity and the Debtors; and (iii) the value of any property transferred in connection with a Transaction will be determined on the basis of the fair market value of such property at closing as determined in good faith by Canaccord Genuity and the Debtors.

12.      The Fee and Expense Structure is comparable to compensation generally charged by other firms of similar stature to Canaccord Genuity for comparable engagements, both in and out of bankruptcy.  The foregoing compensation arrangements are reasonable, market-based, and consistent with Canaccord Genuity's normal and customary billing practices for comparably sized and complex cases, both in- and out-of-court, involving the services to be provided in these Chapter 11 cases.

13.      The Debtors and Canaccord Genuity negotiated the terms of the Fee and Expense Structure based upon, among other things, Canaccord Genuity's expertise, commitment of

8

resources to this engagement to the exclusion of other possible employment, and the time that Canaccord Genuity will likely devote to this engagement. Specifically, Canaccord Genuity's industry and restructuring experience, its capital markets knowledge, financing skills, and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Canaccord Genuity's engagement, were important factors in determining the Fee and Expense Structure. The ultimate benefit to the Debtors of Canaccord Genuity's services could not be measured merely by reference to the number of hours to be expended by Canaccord Genuity's professionals in the performance of such services. Moreover, the Fee and Expense Structure takes into consideration Canaccord Genuity's anticipation that it will need to continue to provide a substantial commitment of professional time and effort in order to perform its duties under the Engagement Letter, and in light of the fact that such commitment may foreclose other opportunities for Canaccord Genuity. Further, the actual time and commitment required of Canaccord Genuity and its professionals to perform its services for the Debtors may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

14.     Canaccord Genuity will file with the Court a final fee application for allowance of its compensation and reimbursement of it expenses with respect to services rendered to the Debtors. However, it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys or to keep time records on a "project category" basis. As such, Canaccord Genuity requests that it be permitted to present reasonably detailed descriptions of those services provided on behalf of the Debtors and the individuals who provided professional services on behalf of the Debtors.

15.     In addition, the Debtors have agreed to certain indemnification provisions described in the Engagement Letter and the Indemnity Agreement thereto ("**Indemnification**

**Provisions**"). The terms of the Indemnification Provisions are standard engagement provisions, both in and outside chapter 11, and reflect the qualifications and limits on such terms that are customary for Canaccord Genuity and other similar investment bankers and financial advisors.

16.     No agreement exists to share with any other person or firm any compensation received by Canaccord Genuity for its services in this case. No promises have been received by Canaccord Genuity, or by any employee thereof, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

17.     Based on the above, I believe the Fee and Expense Structure is fair and reasonable.

### Prepetition Compensation Received by Canaccord Genuity from the Debtors

18.     Prior to the Petition Date, Canaccord Genuity received $200,000 in fees and $19,284.75 in expenses for services rendered and expenses incurred under the engagement letters. As of the Petition Date, Canaccord Genuity does not hold any claim against the Debtors.

### Canaccord Genuity's Disclosure Policies and Disinterestedness

19.     In connection with its proposed retention by the Debtors in these Chapter 11 cases, Canaccord Genuity performed a conflicts search on the Debtors and other individuals or entities that may be parties in interest (collectively, "**Potential Parties in Interest**"). The identities of the Potential Parties in Interest, attached hereto as Schedule A, were provided to Canaccord Genuity by the Debtors and include the following entities:

    a.     The Debtors
    b.     Former Affiliates of the Debtors
    c.     Executive Officers
    d.     Former Officers
    e.     Directors
    f.     Former Directors
    g.     Professionals
    h.     Holders of Secured Debt

i.    Indenture Trustees/Agents
j.    Thirty Largest Unsecured Creditors
k.    Significant Equity Security Holders (>5%)
l.    Parties to Pending Litigation
m.    Co-defendants in Pending Litigation
n.    Banks Holding Accounts
o.    Utilities
p.    Factors
q.    Insurers and Related Parties
r.    Employee Benefits Providers
s.    Landlords
t.    Office of the United States Trustee
u.    Colorado Bankruptcy Court Judges
v.    Other Parties

20.    In preparing this Declaration, I caused Canaccord Genuity staff to use a set of procedures developed by Canaccord Genuity to identify conflicts and potential interested transactions, including to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules regarding the retention of professionals by a debtor under the Bankruptcy Code ("**Firm Disclosure Procedures**").  Pursuant to the Firm Disclosure Procedures, I caused the following actions to be performed in order to identify the parties relevant to this declaration and to ascertain Canaccord Genuity's connection to such parties: (a) Canaccord Genuity compared each of the Potential Parties in Interest to the names that Canaccord Genuity has compiled into a global, master database of companies for which Canaccord Genuity is currently doing, or has in the past done, investment banking work, covered in its research department, or with whom Canaccord Genuity has entered into a confidentiality or non-disclosure agreement; (b) Canaccord Genuity compared each of the Potential Parties in Interest to the names that Canaccord Genuity has compiled into a database of institutional clients and other parties holding trading accounts with Canaccord Genuity; and (c) Canaccord Genuity circulated internally to its investment banking professionals a list of the Potential Parties in

11

Interest and requested that the professionals identify relationships with any of the persons or entities on the list of Potential Parties in Interest.

21.    Insofar as I have been able to ascertain from the results of the foregoing, to the best of my knowledge:

     a.    Neither Canaccord Genuity, nor its affiliates, nor any professional of Canaccord Genuity has been retained to assist any entity or person other than the Debtors in any matters relating to, or in connection with, these Chapter 11 cases.

     b.    The attached Schedule B lists any of the Potential Parties in Interest (or their apparent affiliates, as the case may be) that have retained Canaccord Genuity within the last three years to represent them in matters unrelated to these Chapter 11 cases.

     c.    Other than as listed on Schedule B, I am unaware of any engagement of Canaccord Genuity by the Potential Parties in Interest within the last three years.

     d.    Other than as described herein, neither Canaccord Genuity, nor its affiliates, nor any professional of Canaccord Genuity has any connection with the Debtors in these Chapter 11 cases, or any interest materially adverse to the interest of any class of creditors or equity security holders by reason of any direct or indirect relationship to the Debtors, any other Potential Parties in Interest or their respective attorneys.

22.    In addition to the parties listed on Schedule B, Canaccord Genuity may also have represented certain Potential Parties in Interest in the past and Canaccord Genuity may have worked with, continue to work with and/or have mutual clients with, certain accounting and law firms and other professionals who appear on the Potential Parties in Interest list.  Some of the professionals, in connection with their employment before joining Canaccord Genuity, may have appeared or were engaged in cases, proceedings, or transactions involving attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and Potential Parties in Interest.  In addition, Canaccord Genuity (including its professionals through their prior employment) has in the past and will likely in the future be

working with or against other professionals involved in these Chapter 11 cases in matters unrelated to these Chapter 11 cases.  To the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors in matters upon which Canaccord is to be engaged in these Chapter 11 cases.

23.     On August 27, 2014, Canaccord acted as a 10% co-manager on a $175MM high yield note issuance led by GMP Securities.  Canaccord Genuity's role as one of the three co-managers included reviewing and giving approval for diligence checklists and the final offering memorandum. In addition, Canaccord Genuity utilized its high yield sales force to support the book-runner in getting commitments to the transaction.

24.     On March 24, 2014 Canaccord Genuity acted as a 10% junior co-manager on an $83.5MM common stock follow-on offering led by Johnson Rice & Co.  On that offering, there were two senior co-managers and one other junior co-manager.

25.     Given the size and breadth of Canaccord Genuity's client base, it is possible that some past or present clients of Canaccord Genuity may have some connection to, or are creditors of or holders of securities of, the Debtors or that Canaccord Genuity may now or in the future be retained by one or more of the Potential Parties in Interest in unrelated matters without my knowledge.  To the extent that Canaccord Genuity discovers any, or enters into any new, material relationship with Potential Parties in Interest, it will supplement this disclosure to the Court promptly.

26.     Canaccord Genuity is the U.S. operating subsidiary of an international financial advisory and asset management firm and thus has several legally separate and distinct affiliates. Although it is possible that employees of certain affiliates may assist Canaccord Genuity in connection with Canaccord Genuity's engagement, as Canaccord Genuity is the only entity being

13

retained by the Debtors, we have searched only the electronic client files and records of Canaccord Genuity, not all of its affiliates, to determine connections with any Potential Parties in Interest.

27.     Canaccord Genuity also has an asset management and an institutional sales and trading business.  While Canaccord Genuity receives payments generated by these businesses, these businesses are operated as separate and distinct businesses and are separated from Canaccord Genuity's financial advisory business.  As part of its regular business operations, Canaccord Genuity may act as investment advisor or trade securities (including in discretionary client accounts and through its operation of mutual funds, in which case investment decisions are made by Canaccord Genuity), including on behalf of the Debtors' creditors, equity holders, or other Potential Parties in Interest, and Canaccord Genuity or its affiliates and employees. Canaccord Genuity has in place compliance procedures to ensure that no confidential or non-public information concerning the Debtors has been or will be available to employees of Canaccord Genuity's asset management and institutional sales and trading businesses.

28.     Some of Canaccord Genuity's present and future employees may have, or may in the future have, personal investments in funds or other investment vehicles over whose investment decisions such employees have no input or control.  Such entities may have made, or may in the future make, investments in the Debtors' securities, or those of its creditors, or other Potential Parties in Interest in these Chapter 11 cases.

29.     In light of the extensive number of the Debtor's creditors and Potential Parties in Interest, neither I nor Canaccord Genuity are able conclusively to identify all potential relationships at this time, and we reserve the right to supplement this disclosure as additional relationships come to our attention.  In particular, among other things, Canaccord Genuity may

14

have relationships with persons who are beneficial owners of Potential Parties in Interest and persons whose beneficial owners include Potential Parties in Interest or persons who otherwise have relationships with Potential Parties in Interest. Moreover, Canaccord Genuity employees may have relationships with Potential Parties in Interest, persons that may become parties in interest in this case, and/or persons that have business relationships with the Debtors, are competitors of the Debtors, or that are vendors of the Debtors. If any new relevant facts or relationships are discovered or arise, Canaccord Genuity will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

30. Based upon the foregoing, I believe Canaccord Genuity is disinterested as defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors or their estates.

31. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 29, 2015.

By:/s/Geoffrey A. Richards
Name: Geoffrey A. Richards
U.S. Head, Special Situations & Restructuring

15