## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| American Eagle Energy Corporation | ) | |
| Tax ID / EIN: 20-0237026 | ) | Case No.  15-15073-HRT |
| | ) | |
| AMZG, Inc. | ) | |
| Tax ID / EIN: 20-8642477 | ) | Case No. 15-15074-HRT |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

_____

### ORDER: (A) SCHEDULING THE AUCTION FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, AND (B) APPROVING PROCEDURES FOR THE SUBMISSION OF QUALIFYING BIDS AND CONDUCTING THE AUCTION

This matter came on for hearing on July 13, 2015 (the "Hearing") on American Eagle Energy Corporation and AMZG, Inc.'s (collectively, the "Debtors") Motion (the "Motion") Seeking Entry of an Order (the "Bidding Procedures Order"): (i) scheduling the auction for sale of substantially all their assets (the "Sale"); (ii) approving procedures attached hereto as Schedule 1 (the "Proposed Bidding Procedures") for the submission of qualifying bids and conducting the auction; and (iii) approving procedures for the assumption and assignment of contracts and leases attached hereto as Schedule 2 (the "Notice of Assumption and Assignment"). The Court having determined that it has jurisdiction over the matters raised by the Motion and that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and it appearing that proper and adequate notice has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; it is hereby:

**ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Bidding Procedures, as set forth in  Schedule 1 attached hereto and incorporated herein by reference as if fully set forth in this Order, are hereby approved and shall govern all proceedings relating to the solicitation of bids for the Purchased Assets[1] in these cases and the Auction.

2.      The 11.0% Senior Secured Notes Due 2019 issued by American Eagle Energy Corporation and guaranteed by AMZG, Inc. (the "Noteholders") shall be the stalking horse bidder (the "Stalking Horse Bidder").

3.      The deadline to submit bids for all or a portion of the Purchased Assets shall be **September 2, 2015, at 5:00 p.m. (Prevailing Mountain Time)** (the "Bid Deadline").

4.      Notwithstanding any contrary requirement in a contract or other agreement with the Debtors, holders of any enforceable preferential purchase right, right of first refusal, right of first offer or similar right (a "Preferential Purchase Right") that is exercisable by any Person in respect of any Purchased Asset(s) (each a "Preferential Purchase Right Holder") must submit a written notice (the "Preferential Purchase Right Notice") by mail, facsimile, or email, prior to the Bid Deadline to counsel to: (i) the Debtors, Baker & Hostetler, LLP, 45 Rockefeller Plaza, New York, NY 10111-0100, Attn: Jorian L. Rose (jrose@bakerlaw.com) and 200 SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, FL 32801-3432, Attn: Elizabeth A. Green (egreen@bakerlaw.com); (ii) the Ad Hoc Group and Stalking Horse Bidder, Andrews Kurth LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Paul N. Silverstein (paulsilverstein@andrewskurth.com) and 600 Travis, Suite 4200, Houston, TX 77002, Attn: Timothy A. ("Tad") Davidson II (taddavidson@andrewskurth.com); and (iii) Canaccord

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

Genuity, Inc., 350 Madison Avenue, New York, New York 10017, Attn: Geoffrey Richards (GRichards@canaccordgenuity.com); indicating that such holder may exercise its Preferential Purchase Right at the Auction.

5.      If a holder of a Preferential Purchase Right does not submit such notice to the Debtors by the Bid Deadline, such holder is deemed to have forever waived its Preferential Purchase Right in connection with the Debtors' Sale of the Purchased Assets contemplated by these Bidding Procedures.  The Debtors, the Stalking Horse Bidder, and the Ad Hoc Group shall have the right to object to, contest, or otherwise challenge the validity of any Preferential Purchase Right and the submission of a Preferential Purchase Right Notice shall not constitute an admission by the Debtors, the Stalking Horse Bidder, or the Ad Hoc Group that such holder has a Preferential Purchase Right. Only Preferential Purchase Right Holders that have timely submitted a Preferential Purchase Right Notice may exercise such rights at the Auction.

6.      If a Qualified Bid (other than the Stalking Horse APA) by a Qualified Bidder is received for the purchase of the Purchased Assets by the Bid Deadline, the Auction shall be conducted on September 9, 2015 at 10:00 a.m. (Prevailing Mountain Time) by the Debtors pursuant to the Bidding Procedures at the offices of Baker & Hostetler, LLP, 1801 California St., Suite 4400, Denver, CO.  If no other Qualifying Bids are received by the Bid Deadline other than the Stalking Horse Bid, then no Auction will be held and the Debtors shall proceed to seek approval of the sale to the Stalking Horse Bidder at the sale hearing which shall take place on **September 10, 2015, at 9:30 a.m. (Prevailing Mountain Time) ("Sale Hearing")**.

7.      On or prior to July 28, 2015,  the Debtors shall file and serve a notice ("Contract Notice") to all counter-parties of unexpired leases and executory contracts as set forth in the Debtors' respective  Schedule of Executory Contracts and Unexpired Leases [Docket No. 66]

3

and Schedule of Surface Use Agreements and Road Use Agreements [Docket No. 66-2] which identifies, to the extent applicable: (i) all executory contracts and unexpired leases; (ii) the name and address of the contract counterparties thereto; and (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount"). Each counter-party to an executory contract or unexpired lease listed on the Contract Notice shall be responsible for reviewing the proposed cure amount listed in the Contract Notice and filing a timely objection if it does not agree with the proposed cure amount listed in the Contract Notice or if it has an objection related to whether the Stalking Horse Bidder can provide adequate assurance of future performance.

8.      All objections regarding the proposed cure amounts of any executory contract or unexpired lease listed in the Contract Notice or the ability of the Stalking Horse Bidder to provide adequate assurance of future performance must: (a) be filed with the Court on or before **August 28, 2015 at 5:00 p.m. (Prevailing Mountain Time)** (the "Contract Assumption Objection Deadline") and served on the Objection Notice Parties; (b) identify the Purchased Contract to which the objector is party; (c) describe with particularity any cure the claimant contends is required under Section 365 of the Bankruptcy Code (the "Cure Claim") and identify the bases of the alleged Cure Claim under the executory contract or unexpired lease; (d) identify the basis for any objection related to the Stalking Horse Bidder's ability to provide adequate assurance of future performance ("Stalking Horse Adequate Assurance Objection"); and (e) attach all documents supporting or evidencing the Cure Claim and Stalking Horse Adequate Assurance Objection.

607088164.2

9.      Following the conclusion of the Auction, the Debtors will provide further notice to all parties listed on the Contract Notice as to whether their respective agreement is to be assumed or rejected.  Any dispute over the amount of a Cure Claim asserted by a party to a "to be assumed" agreement will be adjudicated at the Sale Hearing.  Moreover, to the extent the Stalking Horse Bidder is the Winning Bidder, any Stalking Horse Adequate Assurance Objection will also be adjudicated at the Sale Hearing.

10.     If at any time after service of the Contract Notice, the Debtors discover additional prepetition contracts and/or unexpired leases to be assumed and assigned as potential Purchased Contracts (whether before or after closing of any Sale), the Debtors shall file and serve a supplemental notice ("Supplemental Contract Notice(s)") which identifies the Cure Amount for the agreements listed on such Supplemental Contract Notice(s).  Any contract counterparty served with a Supplemental Contract Notice(s) on or prior to August 14, 2015, shall file any Cure Claim or Stalking Horse Adequate Assurance Objection by the Contract Assumption Objection Deadline and such objections will be adjudicated at the Sale Hearing.  Any contract counterparty served after August 14, 2015 shall have fourteen (14) days from service of the Supplemental Contract Notice(s) to file a Cure Claim or Stalking Horse Adequate Assurance Objection or, if applicable, other adequate assurance objection (if the Stalking Horse Bidder is not the Winning Bidder) and such objections will be adjudicated by the Bankruptcy Court as soon as practicable.

11.     In the event the Stalking Horse Bidder is not the Winning Bidder, all counterparties to an agreement to be assumed and assigned shall have fourteen (14) days from the Sale Hearing to object only with respect to the Winning Bidders ability to provide adequate assurance of future performance; provided, however, the pendency of this objection period or

5

any objection filed shall not delay the entry of an order approving the Sale.  A hearing on any such objections will be adjudicated by the Bankruptcy Court as soon as practicable.

12.     All objections to the Sale must be filed with the Court on or before **August 20, 2015 at 5:00 p.m. (Prevailing Mountain Time)**.

13.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: _____July 24, 2015_____

BY THE COURT:

*Howard Tallman*

HONORABLE HOWARD R. TALLMAN
United States Bankruptcy Judge

6

607088164.2

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| American Eagle Energy Corporation | ) |
| Tax ID / EIN: 20-0237026 | ) Case No.  15-15073-HRT |
| | ) |
| AMZG, Inc. | ) |
| Tax ID / EIN: 20-8642477 | ) Case No. 15-15074-HRT |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |

## BIDDING PROCEDURES

By motion dated June 26, 2015 (the "Motion")[2] American Eagle Energy Corporation and AMZG, Inc. (collectively, the "Debtors") sought approval of procedures through which the Debtors, in consultation with the ad hoc group of holders of the 11.0% Senior Secured Notes Due 2019 issued by American Eagle Energy Corporation and guaranteed by AMZG, Inc. (the "Ad Hoc Group"), will determine the highest or otherwise best price for the sale of substantially all of their assets (collectively, the "Purchased Assets") outside the ordinary course of business (the "Sale").

The sale will be subject to competitive bidding as set forth herein and approval of the Court pursuant to sections 105, 363, and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors shall seek approval of the Sale to the Winning Bidder in the Sale Motion discussed below.  The process and procedures are set forth below (the "Bidding Procedures"):

### A.    *Bid Requirements*

1.    Any entity wishing to participate in the bidding process (each a "Potential Bidder") may submit a bid for either: (i) all or substantially all of the Debtors' assets; or (ii) only certain of the Debtors' assets (a "Piecemeal Bid").

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion, as applicable.

2.      To participate in the Sale process, each Potential Bidder must on or before September 2, 2015 at 5:00 p.m. prevailing Mountain Time (the "Bid Deadline"):

a.      Submit to the Debtors a Modified Agreement (defined below) that includes a purchase price for the Purchased Assets (as defined in the Stalking Horse APA) in an amount no less than the requisite overbid amount to be determined by the Debtors after consultation with the Ad Hoc Group and such amount previously filed with the Court (the "Requisite Overbid Amount") in cash or in cash equivalents, which is the sum of the stalking Horse APA purchase price which is $70,000,000, plus the assumed liabilities as identified in the Stalking Horse APA (unless the same liabilities are assumed in the Modified Agreement), plus $250,000.00 in cash or in cash equivalents, and is net of any adjustments in the purchase price resulting from any costs arising in connection with Title Defects or violations, or conditions or circumstances giving rise to liability, under any Environmental Laws, unless otherwise consented to by the Debtors and the Ad Hoc Group; provided that, if such competing bid is a Piecemeal Bid, this requirement will be satisfied if the sum of all Piecemeal Bids received are Qualified Bids and combined exceed the Requisite Overbid Amount.  In the event the collective sum of the highest Piecemeal Bid for each of the Debtors' assets is equal to or larger than the Requisite Overbid Amount, the requirements of this subsection will be met for determining whether the collective Piecemeal Bids will be considered a Qualified Bid.  Moreover, the Debtors reserve the right to

2

invite any Piecemeal Bidder to the Auction notwithstanding such bidder's failure to comply with this subsection.

b.      Submit to the Debtors an executed confidentiality agreement in form and substance acceptable to the Debtors.

c.      Fully disclose the identity of each entity that will be bidding for the assets or otherwise participating in connection with such bid and the complete terms of any such participation.

d.      Indicate the form of consideration of the bid and the estimated market value of any non-cash consideration.

e.      If the Potential Bidder is submitting a Piecemeal Bid, the Potential Bidder must identify which assets are included in the bid.

f.      Submit to the Debtors an irrevocable offer in the form of an executed asset purchase agreement (the "Modified Agreement"): (A) without financing, regulatory, or due diligence contingencies, including with respect to Title Defects or Environmental Laws, unless otherwise consented to by the Debtors, after consultation with the Ad Hoc Group, and without any or other contingencies; (B) at a price with a readably ascertainable market value in an amount equal to or greater to the Requisite Overbid Amount; and (C) on terms substantially similar to those terms contained in the Stalking Horse APA, and in no event, on terms less favorable to the Debtors than those contained in the Stalking Horse APA. The Qualified Bidder shall also submit a marked (redlined) Modified Agreement reflecting the changes the Qualified Bidder proposes to make to the

Stalking Horse APA.

g.    Make a good faith cash deposit in the form of a cashier's check or wire transfer into an interest-bearing escrow account (the "Escrow Account") maintained by the Debtors' counsel in an amount not less than 10% of the competing bid amount, which deposit shall immediately become non-refundable and credited toward the purchase price if and when the Qualified Bidder making such deposit is declared to be the winning bidder (the "Winning Bid" and "Winning Bidder") at the Sale Hearing.  In the event a Qualified Bidder is not the Winning Bidder, such Qualified Bidder's deposit shall be refunded as set forth herein.

h.    Provide a list of the Debtors' executory contracts and unexpired leases with respect to which the Potential Bidder seeks assumption by and assignment from the Debtors.

i.    Provide reasonably satisfactory written evidence, in the discretion of the Debtors, after consultation with the Ad Hoc Group, the Trustee, and the Creditors' Committee of its financial ability to: (a) fully and timely perform and close the Sale pursuant to the Modified Agreement if it is declared to be the Winning Bidder; and (b) provide adequate assurance of future performance of all executory contracts and unexpired leases to be assigned to it.

j.    Disclose any connections or agreements with the Debtors, the Ad Hoc Group, the Trustee, the Creditors' Committee, or any other known potential, prospective bidder or Qualified Bidder, and/or any officer,

4

director or equity security holder of the Debtors.

k.  Confirm in writing its agreement to accept and abide by the terms, conditions and procedures set forth herein and provide evidence of due authorization to enter into the Sale pursuant to the Modified Agreement. In the event that the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Bidder must furnish written evidence acceptable to the Debtors and the Ad Hoc Group of the approval of the contemplated transaction by the equity holders or members of such Potential Bidder.

l.  Not request or seek entitlement to any break-up fee, expense reimbursement, termination fee or similar type of payment or bid protection, except as otherwise provided herein.

3.  The Debtors shall provide the counsel to the Ad Hoc Group, the Trustee, and the Creditors' Committee copies of all bids and Preferential Purchase Right Notices (as defined below) promptly upon receipt.  The Debtors will promptly advise each Potential Bidder in writing whether or not the Potential Bidder is a Qualified Bidder.  If a bid submitted on or prior to the Bid Deadline fails to meet all the requirements of a Qualified Bid, the Debtors, after consultation with the Ad Hoc Group, are entitled to work with the Potential Bidder in an effort to cure any defects in the bid and to cause such bid to become a Qualified Bid prior to the commencement of the Auction (as defined below).

**B.  *Bid Deadline***

4.  The Bid Deadline for submitting bids on the Purchased Assets by a Potential Bidder shall be **September 2, 2015 at 5:00 p.m. (prevailing Mountain Time)**.

5.      A Potential Bidder that desires to make a bid must deliver written copies of its bid, by mail, facsimile, or email, prior to the Bid Deadline to: (i) counsel to the Debtors, Baker & Hostetler, LLP, 45 Rockefeller Plaza, New York, New York 10111, Attn: Jorian L. Rose (jrose@bakerlaw.com) and 200 SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, Florida 32801, Attn: Elizabeth A. Green (egreen@bakerlaw.com); (ii) counsel to the Ad Hoc Group and Ad Hoc Group, Andrews Kurth LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Paul N. Silverstein (paulsilverstein@andrewskurth.com) and 600 Travis, Suite 4200, Houston, Texas 77002, Attn: Timothy A. ("Tad") Davidson II (taddavidson@andrewskurth.com); (iii) counsel to the Creditors' Committee, Pachulski, Stang, Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067, Attn: Jeffrey N. Pomerantz, (jpomerantz@pszjlaw.com); (iv) counsel to the Trustee, Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178, Attn: Benjamin D. Feder (bfeder@kelleydrye.com); (v) Canaccord Genuity, Inc., 350 Madison Avenue, New York, New York 10017, Attn: Geoffrey Richards (GRichards@canaccordgenuity.com); and (vi) the Office of the United States Trustee, Byron G. Rogers Federal Building 1961 Stout Street, Suite 12-200, Denver, Colorado 80294, Attn: Alan Motes (Alan.Motes@usdoj.gov), so as to be actually received no later than the Bid Deadline.

6.      After the Bid Deadline, but at least one business day prior to the Auction (as defined below), the Debtors may provide each Qualified Bidder that submits a Qualified Bid with a copy of all Qualified Bids and all Preferential Purchase Right Notices other than: (i) agreements, schedules, exhibits, and annexes which contain confidential or financial information of the Potential Bidder submitting the Qualified Bid; and (ii) financing letters delivered in connection with such Qualified Bid.

607088164.2

C.    *Obtaining Due Diligence Access and Due Diligence Requests from Potential Bidders*

7.    Upon execution of a confidentiality agreement in a form acceptable to the Debtors and proof of financial wherewithal to consummate a transaction for the Requisite Overbid Amount plus any additional bid to be made at the Auction (as defined below), any Potential Bidder that wishes to conduct due diligence on the Purchased Assets may be granted access to all material information that has been or will be provided to the Ad Hoc Group and other bidders. The due diligence period for Potential Bidders will end one (1) business day prior to the Bid Deadline.

8.    The Debtors along with their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; provided, however, the Debtors may decline to provide such information to Potential Bidders who, the Debtors in their reasonable business judgment determine do not intend in good faith to, or have the capacity to, consummate the purchase of any or all of the Assets.

9.    The Debtors designate Canaccord Genuity, Inc. to coordinate all reasonable requests for additional information and due diligence access.  The contact information for Canaccord Genuity, Inc. is: Canaccord Genuity, Inc., 350 Madison Avenue, New York, New York 10017, Tel. 212.849.3919, Attn: Geoffrey Richards, grichards@canaccordgenuity.com.

10.    Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale.  Failure by a Potential Bidder to comply with requests for additional information may be a basis for a determination that a bid made by such Potential Bidder is not a Qualified Bid.

607088164.2

**D.**   ***"As Is, Where Is"***

11.     The Sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates, except to the extent set forth in the purchase agreement between the Debtors and a Winning Bidder, the assignment and bill of sale delivered pursuant to such purchase agreement, or the order approving the sale of the Purchased Assets by the Debtors to the Winning Bidder.  Except as otherwise may be provided in the Stalking Horse APA, all of the Debtors' rights, title and interest in and to the Purchased Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests"), such Interests to attach to the net proceeds (if any) of the Sale of the Purchased Assets, with the same validity and priority as existed immediately prior to such Sale.

12.     Each Qualified Bidder, other than the Ad Hoc Group (whose acknowledgements and representations are contained in the Stalking Horse APA), shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Purchased Assets prior to making its offer, that it has relied solely upon its independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the proposed asset purchase agreement between such Qualified Bidder and the Debtors.

### E.   The Auction

13.   If a Qualified Bid (other than the Stalking Horse APA) by a Qualified Bidder is received by the Bid Deadline, an auction (the "Auction") with respect to the sale of the Purchased Assets shall take place on September 9, 2015 at 10:00 a.m. (prevailing Mountain Time) (the "Auction Date") at the offices of Baker & Hostetler, LLP, 1801 California St., Suite 4400, Denver, Colorado, or such other place and time as the Debtors shall notify all Qualified Bidders, the Ad Hoc Group, the Creditors' Committee, the Trustee, any party that submits a Preferential Purchase Right Notice, and any other invitees so invited by the Debtors.   If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held and the Debtors will proceed to sell the Purchased Assets pursuant to the Stalking Horse APA.

14.   The following rules shall apply at the Auction:

a.   Only Qualified Bidders that have submitted Qualified Bids shall be entitled to make a bid at and otherwise participate in the Auction. In addition, any party that has submitted a Preferential Purchase Right Notice may exercise its Preferential Purchase Right at the Auction.  The Ad Hoc Group is deemed to be a Qualified Bidder and the Ad Hoc Group is deemed to be a Qualified Bid;

b.   Each Qualified Bidder or Preferential Purchase Right Holder shall appear in person or have an authorized representative appear on the Qualified Bidder's or Preferential Purchase Right Holder's behalf;

c.   Each Qualified Bidder or Preferential Purchase Right Holder participating in the Auction will be required to confirm that it has not engaged in any

collusion with respect to the bidding or the Sale;

d.  The Debtors, in their business judgment and in consultation with the Ad Hoc Group and the Trustee will determine which Qualified Bid is the Opening Bid;

e.  The Debtors, in their business judgment and in consultation with the Ad Hoc Group and the Trustee shall select the number of Qualified Bidders participating in the Auction and will conduct the Auction in the manner that they determine will best promote the goals of the bidding process and will achieve the maximum value for the Purchased Assets;

f.  After selection of the Opening Bid, Qualifying Bidders may then submit successive bids on an open basis in increments of at least $500,000.00 higher in cash or in cash equivalents than the preceding Qualified Bid; provided, however, that the Debtors, after consultation with the Ad Hoc Group, may modify the bid increment requirement amount;

g.  The Debtors, after consultation with the Ad Hoc Group and the Trustee may continue the Auction from time to time, adjourn the Auction at any time and re-open the Auction at any time prior to the commencement of the Sale Hearing;

h.  At the conclusion of the Auction, the Debtors, after consultation with the Ad Hoc Group and the Trustee (or, if no bid or collection of Piecemeal Bids is greater than the sum of the allowed secured claims of the Noteholders, with the consent of the Ad Hoc Group), and the Creditors' Committee, shall identify the Winning Bid and the Winning Bidder.

There may be more than one Winning Bid and Winning Bidder if individual Piecemeal Bids are determined to be Qualified Bids. The Debtors, after consultation with the Ad Hoc Group, the Trustee and the Creditors' Committee, shall also name the entity presenting the next highest and best bid (the "Next Highest Bid") and the entity presenting same (the "Next Highest Bidder"). At the Sale Hearing (as defined below), the Debtors shall present the Winning Bid and Next Highest Bid to the Court for approval. The Debtors' presentation of the announced Winning Bid to the Court for approval does not constitute the Debtors' acceptance of such Winning Bid. The

i.   Debtors shall have accepted a Winning Bid only when the Court has approved such bid;

j.   The Debtors reserve all rights to terminate the bidding process at any time if the Debtors determine, consistent with their fiduciary duties and in their business judgment, after consultation with the Ad Hoc Group and the Trustee, that the bidding process will not maximize the value of the Debtors' estates; and

k.   Bidding at the Auction will be transcribed to ensure an accurate recording of the bidding.

### F.   *Holders of Preferential Purchase Rights*

15.   Notwithstanding any contrary requirement in a contract or other agreement with the Debtors, holders of Preferential Purchase Rights[3] (each a "Preferential Purchase Right

---

[3] A "Preferential Purchase Right" is any right under an agreement which confers a special preference or option on such agreement counterparty. One example is a right of first refusal under an existing agreement with the Debtors

Holder") must submit a written notice (the "Preferential Purchase Right Notice") by mail, facsimile, or email, prior to the Bid Deadline to counsel to (i) the Debtors, Baker & Hostetler, LLP, 45 Rockefeller Plaza, New York, New York 10111, Attn: Jorian L. Rose (jrose@bakerlaw.com) and 200 SunTrust Center, Suite 2300, 200 South Orange Avenue, Orlando, Florida 32801, Attn: Elizabeth A. Green (egreen@bakerlaw.com); (ii) the Ad Hoc Group and Ad Hoc Group, Andrews Kurth LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Paul N. Silverstein (paulsilverstein@andrewskurth.com) and 600 Travis, Suite 4200, Houston, Texas 77002, Attn: Timothy A. ("Tad") Davidson II (taddavidson@andrewskurth.com); and (iii) Canaccord Genuity, Inc., 350 Madison Avenue, New York, New York 10017, Attn: Geoffrey Richards (GRichards@canaccordgenuity.com), indicating that such holder may exercise its Preferential Purchase Right at the Auction.

16.     If a holder of a Preferential Purchase Right does not submit such notice to the Debtors by the Bid Deadline, such holder is deemed to have forever waived its Preferential Purchase Right in connection with the Debtors' Sale of the Purchased Assets contemplated by these Bidding Procedures. The Debtors and the Ad Hoc Group reserve the right to object to, contest or otherwise challenge the validity of any Preferential Purchase Right and the submission of a Preferential Purchase Right Notice shall not constitute an admission by the Debtors or the Ad Hoc Group that such holder has a Preferential Purchase Right. Preferential Purchase Right Holders that have timely submitted a Preferential Purchase Right Notice may only exercise such rights at the Auction.

---

over certain assets of the estate. The Debtors expressly reserve any rights to contest the validity or enforceability of any such rights.

### G.      Other Terms

17.      If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when: (i) such bid is declared the Winning Bid at the conclusion of the Auction; (ii) the Winning Bidder (other than the Ad Hoc Group) shall have paid an additional deposit which when added to the initial deposit equals fifteen percent (15%) of the Winning Bid (the "Additional Deposit"); and (iii) definitive documentation has been executed in respect thereof. The Winning Bidder (other than the Ad Hoc Group) shall make the Additional Deposit into the Escrow Account within one (1) business day after the conclusion of the Auction.   Such acceptance by the Debtors of the Winning Bid is conditioned upon approval by the Court of the Winning Bid and the entry of an Order approving such Winning Bid.

18.      In the event that the Winning Bid is reduced before the Closing Date as a result of adjustments to the Purchase Price, for among other things, Title Defects, violations, conditions or circumstances giving rise to liability under any Environmental Laws, or the exercise of Preferential Purchase Rights, such that the Winning Bid is less than the Next Highest Bid, then the Qualified Bidder with the Next Highest Bid that is not entitled to the same reductions to the Purchase Price shall be deemed the Winning Bid and Winning Bidder without further order of the Court.  If the Winning Bid is a Piecemeal Bid (the "Winning Piecemeal Bid") and is subject to adjustments to the Purchase Price as described in the preceding sentence such that the Winning Piecemeal Bid is reduced to less than the Next Highest Bid, which may be the next highest Piecemeal Bid with respect to such assets or the Allocated Value of such Purchased Asset under the applicable asset purchase agreement, then the bidder with the next highest or best bid that is not entitled to the same reductions to the Purchase Price shall be deemed the Winning Bid and Winning Bidder without further order of the Court.

19.     In the event there are two or more Qualified Bidders who submit bids, each Qualified Bidder shall keep its final and highest bid open pending a closing of a transaction of the Winning Bid.  In the event that a transaction of the Winning Bid is not consummated by the Closing Date (unless the Closing Date is extended as set forth herein), the Next Highest Bidder with the Next Highest Bid shall be deemed the Winning Bidder without further order of the Court, and such bidder shall be required to consummate the transaction contemplated in its bid within ten (10) days of being deemed the Winning Bidder.

### H.     Sale Hearing

20.     Debtors propose that the Court hold a hearing on September 10, 2015 at 9:30 a.m. (prevailing Mountain Time) to consider approval of the Sale of the Purchased Assets to the Winning Bidder (or to approve the Stalking Horse APA if no Auction is held).  If the Debtors do not receive Qualified Bids, the Debtors will report the same to the Bankruptcy Court at the Sale Hearing.

21.     The acceptance of all bids shall occur only upon approval of such bid by the Bankruptcy Court at the Sale Hearing.

22.     Following approval of the sale to the Winning Bidder, if the Winning Bidder fails to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtors or the Winning Bidder upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Winning Bidder upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the alternate bidder (to the extent there is one) will be deemed to be the Winning Bidder and the Debtors will be authorized, but not directed, to effectuate a sale to the alternate bidder subject to the terms of the alternate

14

bid of such alternate bidder without further order of the Bankruptcy Court.

### I.   *Return of Deposit*

23.     Upon approval of the Sale by the Court, the Winning Bidder's deposit shall become non-refundable; provided, however, that the Winning Bidder's deposit shall be returned in the event that the Purchase Price of the Winning Bid is reduced below the Next Highest Bid as set forth in paragraph 31 above.  Within five (5) business days of Sale Hearing, all deposits shall be returned to such bidders except for the Winning Bidders deposit and the Next Highest Bidder's deposit.  Within five (5) business days after the closing of the Sale to the Winning Bidder, the refundable deposits of all remaining unsuccessful bidders shall be refunded.  In the event a dispute arises about whether a deposit is refundable or non-refundable, the deposit shall remain in the Escrow Account pending a determination of the dispute by the Court.

### J.   *Failure to Close*

24.     The transaction evidenced by the Winning Bid shall close not later than fifteen (15) days after entry the Sale Order (the "Closing Date") at which time the Winning Bidder shall pay the balance of the Winning Bid (the Winning Bid amount less the deposit) into the Escrow Account.

25.     In the event a declared Winning Bidder fails to timely perform any of its obligations under the Proposed Bidding Procedures or pursuant to the definitive agreements:

   a.    The declared Winning Bidder shall forfeit all deposits made without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages; and, notwithstanding the foregoing, the Debtors and the bankruptcy estates shall retain all other rights, remedies,

claims, counterclaims, and defenses, including the right to seek equitable or injunctive relief.

b.     The Ad Hoc Group shall have the right, but not the obligation to, keep its bid open pending the closing of a transaction with a Winning Bidder that is not the Ad Hoc Group.

c.     c)     The Debtors, after consultation with the Ad Hoc Group, may grant any declared Winning Bidder additional time to perform, and, to the extent necessary, extend the Closing Date.

### K.     Reservation of Rights

26.     The Debtors, the Ad Hoc Group and the Trustee may jointly modify the Bidding Procedures set forth herein at any time prior to or during the Auction if the Debtors determine, in their judgment, that such modifications will better promote the goals of the Auction process and are in the best interests of the bankruptcy estates and the creditors thereof.

27.     The Court shall retain jurisdiction to enforce and interpret these Bidding Procedures and any Order approving them.

### L.     Fees and Expenses

28.     Any bidders presenting bids shall bear their own fees, costs, and expenses in connection with the proposed sale, whether or not such sale is ultimately approved, in accordance with the terms of the purchase agreement. Further, by submitting a bid, a Potential Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code or in any way related to the submission of its bid or the Bidding Procedures. Notwithstanding the foregoing, to the extent the Ad Hoc Group credit bids over and above the Requisite Overbid Amount and is determined to be the Winning Bidder, the Debtors

16

shall reimburse the actual expenses of the next two highest Qualified Bidders who bid at the Auction up to $200,000 each.

**M.**     ***Summary of Assumption and Assignment Procedures***

29.     The Debtors are also seeking approval of certain procedures to facilitate the fair and orderly assumption and assignment of certain executory contracts and unexpired leases following the Auction, if any, pursuant to Section 365(f) of the Bankruptcy Code (collectively, the "Purchased Contracts") in connection with the Sale.  Due to the nature of the bidding process, it is impossible for the Debtors to currently identify the Purchased Contracts that will require assumption and assignment to the successful bidder.  As such, the Debtors further seek authority to establish certain procedures (the "Assumption and Assignment Procedures") by which contract counterparties can object to the potential assignment and assumption of an executory contract or unexpired lease to which it is a party.

30.     On or prior to July 28, 2015,  the Debtors shall file and serve a notice ("Contract Notice") to all counter-parties of unexpired leases and executory contracts as set forth in the Debtors' respective  Schedule of Executory Contracts and Unexpired Leases [Docket No. 66] and Schedule of Surface Use Agreements and Road Use Agreements [Docket No. 66-2] which identifies, to the extent applicable: (i) all executory contracts and unexpired leases; (ii) the name and address of the contract counterparties thereto; and (iii)  the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount").  Each counter-party to an executory contract or unexpired lease listed on the Contract Notice shall be responsible for reviewing the proposed cure amount listed in the Contract Notice and filing a timely objection if it does not agree with the proposed cure amount listed in the Contract Notice or if it has an

objection related to whether the Stalking Horse Bidder can provide adequate assurance of future performance.

31.     All objections regarding the proposed cure amounts of any executory contract or unexpired lease listed in the Contract Notice or the ability of the Stalking Horse Bidder to provide adequate assurance of future performance must: (a) be filed with the Court on or before August 28, 2015 at 5:00 p.m. (Prevailing Mountain Time) (the "Contract Assumption Objection Deadline") and served on the Objection Notice Parties; (b) identify the Purchased Contract to which the objector is party; (c) describe with particularity any cure the claimant contends is required under Section 365 of the Bankruptcy Code (the "Cure Claim") and identify the bases of the alleged Cure Claim under the executory contract or unexpired lease; (d) identify the basis for any objection related to the Stalking Horse Bidder's ability to provide adequate assurance of future performance ("Stalking Horse Adequate Assurance Objection"); and (e) attach all documents supporting or evidencing the Cure Claim and "Stalking Horse Adequate Assurance Objection.

32.     Following the conclusion of the Auction, or in the event there is no Auction, on September 9, 2015, the Debtors shall file with the Court and serve by facsimile, electronic transmission, overnight, or first class mail on the Creditors' Committee, the Ad Hoc Group, the Trustee, and the contract counterparties listed on the Contract Notice or any Supplemental Contract Notice(s) (and such parties' attorneys, if known) a notice: (a) identifying the Purchaser; (b) stating the agreements sought to be assumed and assigned ("Purchased Contracts");  (c) containing a statement as to the Purchaser's ability to perform the Debtors' obligations under the applicable agreements to be assumed and assigned; and (d) listing any agreements sought to be rejected.

33.     If at any time after service of the Contract Notice, the Debtors discover additional prepetition contracts and/or unexpired leases to be assumed and assigned as potential Purchased Contracts (whether before or after closing of any Sale), the Debtors shall file and serve a supplemental Contract notice(s) ("Supplemental Contract Notice(s)") which identifies the Cure Amount for all agreements listed on such Supplemental Contract Notice(s).   Any contract counterparty served with a Supplemental Contract Notice(s) on or prior to August 14, 2015, shall file any Cure Claim or Stalking Horse Adequate Assurance Objection by the Contract Assumption Objection Deadline and such objections will be adjudicated at the Sale Hearing. Any contract counterparty served after August 14, 2015 shall have fourteen (14) days from service of the Supplemental Contract Notice to file a Cure Claim or Stalking Horse Adequate Assurance Objection or, if applicable, other adequate assurance objection (if the Stalking Horse Bidder is not the Winning Bidder) and such objections will be adjudicated by the Bankruptcy Court as soon as practicable.

34.     In the event the Stalking Horse Bidder is not the Winning Bidder, all counterparties to a Purchased Contract shall have fourteen (14) days from the Sale Hearing to object only with respect to the Winning Bidders ability to provide adequate assurance of future performance; provided, however, the pendency of this objection period or any objection filed shall not delay the entry of an order approving the Sale.  A hearing on any such objections will be adjudicated by the Bankruptcy Court as soon as practicable

35.     If no objection is timely and properly filed and served, the Cure Amount set forth in the Contract Notice shall be controlling notwithstanding anything to the contrary in any executory contract or unexpired lease or other document, and the contract counterparty thereto shall be forever barred from asserting any other claim or objection under Section 365(b)(1) (A)

and (B) or otherwise, including, without limitation, any objection to the assignability of any of the Debtors' oil and gas assets, contracts, or leases, against the Debtors or Purchaser with respect to such Purchased Contracts arising prior to the assignment thereof, other than an objection regarding any Purchaser's (other than the Stalking Horse Bidder) ability to provide adequate assurance to perform under the Purchased Contracts pursuant to Section 365(b)(1)(C).  To the extent the Debtors dispute any Cure Claim and such dispute is not resolved prior to the Sale Hearing, such dispute shall be presented to the Court at the Sale Hearing, or such later date and time as the Debtors, the Purchaser, and the objector may agree or the Court may order, but such dispute shall not affect in any way the effectiveness of any assumption and assignment of any executory contract or unexpired lease that is a Purchased Contract.

36.     The failure of an objecting contract counterparty to file a timely objection will be a bar to the assertion of any objection (including to the Sale of Assets free and clear of encumbrances and assumption and assignment of Purchased Contracts) and shall be deemed to constitute consent to the entry of the Sale Order and consummation of the Sale and all transactions related thereto including, without limitation, such assumption and assignment.

607088164.2